James A. SUMMERS, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 84A01–8603–CR–64.

Court of Appeals of Indiana, First District.

July 31, 1986.

Rehearing Denied Sept. 5, 1986.

William G. Smock, Terre Haute, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

James A. Summers appeals his conviction by jury of operating a motor vehicle while intoxicated, a class A misdemeanor.[1] He was fined $5000, sentenced to one year in jail, and his driver's license was suspended for two years.[2] We affirm.

## FACTS

In the early morning hours of January 26, 1985, a pickup truck in which Summers and one Jerre Pinegar, a female, were passengers, failed to heed a railroad crossing flashing signal at Thirteenth Street and Seventh Avenue in Terre Haute. As a result, the truck was struck by a westbound Conrail freight train. Pinegar was thrown from the truck and killed. Immediately prior to the collision, the brakeman in the engine cab observed there were two occupants in the truck, and that a woman was seated on the right hand side of the seat. After the collision, Pinegar's body was lying outside the right side of the truck on the ground between the truck and the tracks. Summers was lying across the floor of the truck with his head and shoulders partially outside the truck on its right side with his legs and feet extending toward the left side and pedals of the truck. A blood alcohol test of Summers revealed .18% blood alcohol. Pinegar's blood alcohol content was .23%.

Officer Joseph Badger of the Indiana State Police, an accident reconstruction expert, testified that in his opinion, Summers was the driver of the pickup truck. A defense witness testified that a few minutes prior to the collision with the train, Summers and Pinegar left the witness's house in the pickup truck with Pinegar driving.

Summers was charged with driving while intoxicated resulting in death, but was convicted of the lesser included offense.

Other relevant facts are stated in our discussion of the issues.

## ISSUES

1. Did the trial court err by allowing Officer Joseph Badger, an accident reconstruction expert, to offer, in response to a hypothetical question, an opinion as to who was the driver of a truck involved in a collision?

2. Is the evidence sufficient to sustain the Defendant's conviction for operating a motor vehicle while intoxicated, a Class A misdemeanor?

## DISCUSSION AND DECISION

*Issue One*

Summers argues it was error to permit Officer Badger to state his opinion as to who was the driver of the pickup truck. Summers objected to such evidence on the grounds (1) determining the placement of individuals inside a vehicle prior to a collision had not been perfected to such an art or science that an opinion thereon would be acceptable as evidence, (2) such was not

1. Indiana Code section 9–11–2–2.

2. Indiana Code section 35–50–3–2 and 9–11–3–1.

shown to be within the area of Officer Badger's expertise, (3) there was no need for expert testimony because the jury was as well able as the expert to form an opinion, (4) the officer had insufficient facts upon which to base an opinion, and (5) the hypothetical question assumed facts not in evidence and facts in conflict. Basically, the objections question the sufficiency of the witness's expertise and the need for expert opinion evidence. Therefore, we turn to an examination of the rules concerning expert testimony.

An expert witness is one who, by reason of education or special experience, has knowledge concerning a subject matter about which persons who have no particular training are incapable of forming an accurate opinion or making a correct decision. *Wade v. State* (1986), Ind., 490 N.E.2d 1097; *Moody v. State* (1983), Ind., 448 N.E.2d 660. The trial court has broad discretion in determining the qualifications of an expert and in admitting opinion evidence. The sufficiency of the foundation for opinion evidence is a matter committed to the sound discretion of the trial court whose decision will be reversed only for an abuse of that discretion. *Id.*

Although it has been said that an expert witness must have observed facts sufficient to enable him to form a valid opinion, *McFarland v. State* (1978), 269 Ind. 385, 381 N.E.2d 85, those facts may be supplied in the form of a hypothetical question which incorporates facts previously adduced at the trial. *Ashby v. State* (1985), Ind., 486 N.E.2d 469; *Brown v. State* (1979), 271 Ind. 129, 390 N.E.2d 1000.

It also has been said that expert testimony is inappropriate and may be excluded from evidence when it concerns matters within the common knowledge and experience of ordinary persons and which the jury may determine as well as the expert. *Breese v. State* (1983), Ind.App., 449 N.E.2d 1098, *trans. denied; City of Bloomington v. Holt* (1977), 172 Ind.App. 650, 361 N.E.2d 1211, *trans. denied; Rosenbalm v. Winski* (1975), 165 Ind.App.

378, 332 N.E.2d 249, *trans. denied.* However, if appropriate, opinion testimony by an expert witness even as to an ultimate fact in issue is not objectionable for the reason that it invades the province of the trier of fact. *Breese*, at 1111. To qualify as an expert, it has been said that two requirements must be met: (1) the subject matter must be related to some scientific field beyond the knowledge of the average lay person, and (2) the witness must be shown to have sufficient skill in that area so that his opinion probably will aid the trier of fact in its search for the truth. *Grimes v. State* (1983), Ind., 450 N.E.2d 512. The trend of recent cases seems to focus more attention on the knowledge and skill of the expert and whether the expert's opinion will be helpful to the trier of fact than on the question of the knowledge of the jury. *See* E.W. Cleary, *McCormick on Evidence*, at 33 (3d ed. 1984). This standard is incorporated in Fed.Rule of Evidence 702, which provides:

> "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

In commenting upon Fed.R.Evid. 702, one authority has said:

> "Must a court exclude expert testimony if the subject is within the comprehension of the average juror? Such a test is incompatible with the standard of helpfulness expressed in Rule 702. First, it assumes wrongly that there is a bright line separating issues within the comprehension of jurors from those that are not. Secondly, even when jurors are well equipped to make judgments on the basis of their common knowledge and experience, experts may have specialized knowledge to bring to bear on the same issue which would be helpful."

3 J. Weinstein and M. Berger, *Weinstein's Evidence*, § 702(02) (1985).

We believe the above quoted comment from *Weinstein,* although directed to Fed.R. of Evid. 702, is appropriate to our consideration of this issue. The modern trend is away from strict application of the rule excluding expert testimony on subjects within the common knowledge of jurors. *Carlson v. Hudson* (1974), 19 Ill.App.3d 576, 312 N.E.2d 19; *Stanley v. Board of Education* (1973), 9 Ill.App.3d 963, 293 N.E.2d 417.

"Traditionally, expert testimony has not been permitted when its subject matter is not beyond the knowledge and experience of the average juror [citation omitted], but more recently, the trend is to permit it if the expert has some special knowledge and his testimony is of aid to the jury even though the average juror would also have some knowledge of the subject matter. [Citations omitted.]"

*Binge v. J.J. Borders Construction Co.* (1981), 95 Ill.App.3d 238, 50 Ill.Dec. 788, 791, 419 N.E.2d 1237, 1240. The modern standard for admissibility of expert testimony is whether that testimony will aid the jurors in understanding the facts. *Johnson v. Commonwealth Edison Co.* (1985), 133 Ill.App.3d 472, 88 Ill.Dec. 449, 478 N.E.2d 1057. In order to be admitted into evidence, the expert testimony must assist the trier of fact in understanding the evidence or deciding a factual issue, and the witness must be qualified by knowledge, skill, experience, training, or education to give such testimony. *Ruffiner v. Material Service Corp.* (1985), 134 Ill.App.3d 747, 89 Ill.Dec. 414, 480 N.E.2d 1157.

Officer Badger testified concerning his training at various police schools in the art of accident reconstruction, and that part of this instruction concerned the application of Newton's law of motion and the laws of physics in the art of accident reconstruction. Clearly, these are matters beyond the scope of the knowledge and experience of the average juror. Officer Badger testified that he applied the laws of motion and laws of physics in arriving at his opinion as to which of the two persons was the driver of the truck. Clearly, this testimony was helpful to the jury in their consideration of the evidence and determination of the crucial factual issue of the identity of the driver. Although the jury might have been able to make that determination from the other evidence, they were aided by the expert testimony, and under the modern standard such evidence was admissible. That the opinion of Officer Badger was concerning an ultimate fact in issue did not render his opinion inadmissible. *Breese,* at 1111. In fact, this court previously has allowed testimony by an accident reconstructionist as to who was driving a vehicle immediately prior to an accident. *Freeman v. State* (1985), Ind.App., 482 N.E.2d 266. In *Freeman,* the defendant denied being the driver. The vehicle involved was registered to the defendant. Two police officers testified he admitted being the driver. A police accident reconstruction expert testified in his opinion that Freeman was the driver and that one Jones was thrown from the passenger's side of the vehicle. Judge Conover, writing for the court, stated: "This evidence was sufficient evidence of probative value from which the jury could determine beyond a reasonable doubt [that] Freeman was driving the automobile." *Id.,* at 267.

*Freeman* is remarkably similar to the case at bar. Here, the brakeman observed a woman seated on the passenger side of the truck immediately prior to the collision; the truck was registered to Summers; after the collision, Pinegar was lying on the ground between the right side of the truck and the tracks; Summers was lying across the floorboard of the truck cab with his head and shoulders partially out of the truck's right door; and the accident reconstruction expert testified that in his opinion Summers was the driver. As in *Freeman,* this evidence was sufficient.

Summers argues Officer Badger was not shown to have any special training or any particular experience to determine who was driving a vehicle prior to an accident. As we pointed out, the trial court has broad discretion to determine the qualifications of an expert and that determina-

tion is reviewable only for abuse of discretion. *Hill v. State* (1984), Ind., 470 N.E.2d 1332; *Hergenrother v. State* (1981), Ind. App., 425 N.E.2d 225 (a case upholding accident reconstruction evidence offered by the same Officer Badger), *trans. denied.* The trial court having determined Badger was qualified as an expert, the extent of his knowledge goes to the weight of his testimony and not to its admissibility. *Rowan v. State* (1982), Ind., 431 N.E.2d 805.

■■ Summers also challenges the hypothetical question put to Officer Badger as containing facts not in evidence. He is in error. We have reviewed the record and find evidence to support each fact assumed in the question. Therefore, there was no error in allowing the hypothetical question. *Napier v. State* (1983), Ind., 445 N.E.2d 1361. Neither is there any merit to Summers's contention that Officer Badger did not have sufficient personal knowledge upon which to form an opinion. Those facts, which were in evidence, properly were supplied by the hypothetical question. *Ashby.*

*Issue Two*

■ Summers challenges the sufficiency of the evidence to sustain his conviction. In reviewing such challenges, we neither weigh the evidence nor judge the credibility of the witnesses. Rather, we consider only that evidence favorable to the verdict, together with all reasonable inferences, and if there is substantial evidence of probative value to support the verdict, it will be upheld. *Bowling v. State* (1986), Ind., 493 N.E.2d 783; *Hansford v. State* (1986), Ind., 490 N.E.2d 1083. Viewed from the proper perspective of appellate review, the evidence recited in our discussion of *Issue One* clearly was sufficient to establish that Summers was the driver of the truck. His blood test revealing .18 percent blood alcohol established his intoxication since .10 percent is prima facie proof of intoxication. Ind.Code § 9-11-1-7. The jury did not have to believe the testimony of the defense witness that Pinegar was driving the truck when she and Summers

left the witness's house shortly before the collision with the train. *McBrady v. State* (1984), Ind., 459 N.E.2d 719; *Collins v. State* (1981), Ind., 429 N.E.2d 623. The evidence was sufficient.

Judgment affirmed.

ROBERTSON, P.J., and NEAL, J., concur.