**Willis Carl WISSMAN, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 20S00–8705–CR–458.**

Supreme Court of Indiana.

July 12, 1989.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Judge.

A jury trial resulted in appellant's conviction of Murder, for which he received a sentence of forty (40) years.

The facts are: On the evening of October 5, 1985, appellant and his wife Carolyn were at their home in Goshen, Indiana with Carolyn's two young sons and their friend Keith Curtis, who was spending the night. Seven-year-old Keith testified that all three boys slept on the couch in the living room that night. He was awakened by the sound of appellant and Carolyn fighting. He heard a gunshot, and then Carolyn fell down in the living room next to the television set. Appellant then shot himself and lay down next to Carolyn. He told one of his stepsons to cover them with a blanket. His other stepson attempted to call an ambulance and requested help from a neighbor.

Officer Terry Schollian testified that at about 5:16 a.m. on October 6, 1985 he responded to a call directing him to appellant's home. Officer Schollian observed a pool of blood on the bed and a shotgun on the floor of appellant's bedroom. He also found appellant and his wife lying on the floor in the living room. Appellant told the officer that they had been arguing, and Carolyn threatened him with a hammer and a butcher knife. Officer Schollian found no knife or hammer in the immediate area, but he did find a butcher knife in a kitchen drawer.

At trial, appellant testified that while in his bedroom he heard a noise in the home and suspected an intruder, so he shot at the floor into the next room in which his wife and stepsons were sleeping to scare him away. He stated he turned on the light and saw his wife lying on the floor. He then shot himself and lay next to her.

The autopsy surgeon, Dr. Swanson, testified that due to the direction in which the victim was lying on the floor and the angle at which the shot pellets penetrated the victim's body, it would have been impossible for someone to have shot her from the direction of the bedroom while she was lying down.

Appellant argues the trial court abused its discretion by refusing to allow into evidence the blood alcohol content of the victim.

The State objected to the admission of the evidence on the grounds of irrelevancy and improper chain of custody. Dr. Swanson testified that although a blood sample was taken on October 6, 1985 he did not know if the victim's blood sample was given to a technician, the coroner, or a police officer, and there was no way to now obtain that information. On October 8, 1985, the victim's blood sample appeared at the South Bend Medical Foundation for testing. The trial court found that there was a total gap in the chain of custody between the hospital and the South Bend Medical Foundation. The State's objection to the admission of the exhibit was sustained.

Appellant argues the victim's blood alcohol content, reported to be .368 milligrams per deciliter, was relevant to show that the deceased was on the floor, in that one could logically presume that she had passed out. It is appellant's position that the lack of chain of custody was the fault of agents of the State and that their negligent destruction of material evidence warrants a reversal because he was prevented from presenting evidence that the victim was lying down when she was shot.

Even if we assume the blood sample possibly could have supported appellant's proposition that the victim was lying down when she was shot, Dr. Swanson testified that from the appearance of her wound, she could have been either standing up or lying down when she was shot, but she could not have been shot from the direction of the bedroom while she was lying down as appellant claimed. Considering the testimony about an argument between appellant and the victim and appellant's admission of shooting her after an argument, we do not believe the prejudice appellant suffered from the excluded exhibit was of such significance as to warrant a reversal. *Turnpaugh v. State* (1988), Ind., 521 N.E. 2d 690.

Appellant argues the trial court erred in allowing Officer Schollian to testify about his self-incriminating statements.

Officer Schollian testified that he located appellant and his wife in their home, and appellant was moving and moaning. The officer checked the victim for vital signs, found none, and determined that she was deceased. He then checked appellant and formed the opinion that his wound was probably fatal. A paramedic asked the officer the victim's name, and Officer Schollian was surprised that appellant was able to respond, "Carolyn." Officer Schollian asked appellant what happened, and he responded that there had been an argument and the victim threatened him with a hammer and a butcher knife. He said he was afraid she was going to hurt the children so he grabbed the shotgun and shot her. He then stated that he shot himself.

Appellant argues his statement was made absent a proper *Miranda* warning,

and he was subjected to custodial interrogation because he was unable to move when he was questioned by the officer. Appellant also concludes that because of a conversation the officer had with a neighbor, and because appellant was shot at close range while his wife was not, the officer knew he was a suspect in the crime.

■ Officer Schollian testified that as a result of his conversation with a neighbor, he entered appellant's home. From such a general statement, we cannot conclude that the neighbor gave his opinion about who shot appellant and his wife. Additionally, we disagree with appellant that because his gunshot wound was at close range, the officer knew he shot his wife and himself; a third party could have inflicted the wounds appellant and his wife received.

■ It is reasonable to assume that the officer responded to a call of a shooting, found two victims and asked the one still alive what happened. Not every question a police officer asks amounts to "interrogation." Here appellant had not yet been placed in custody. Officer Schollian's general inquiry of what happened was for information, not a question used to elicit a confession from appellant. Thus this is not a case of custodial interogation. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. We find no error in the admission of appellant's statements.

Appellant also argues the State failed to establish the *corpus delicti* before the admission of Officer Schollian's testimony about appellant's statements.

■ For appellant's confession to be admissible, the State was required to present evidence which showed that the specific crime charged was committed by someone. *Moore v. State* (1986), Ind.App. 497 N.E.2d 242. The State is not required to prove the *corpus delicti* by independent evidence prior to the admission of a confession, provided the totality of independent evidence presented at trial establishes it. *Douglas v. State* (1985), Ind., 481 N.E.2d 107.

Keith Curtis testified that when he was spending the night in appellant's home, he heard appellant and his wife arguing and heard a gunshot, then appellant's wife fell down. Appellant's stepson testified that he heard his mother say, "Shoot me," and then she was shot. We find the totality of independent evidence presented by the State established the *corpus delicti* of murder.

Appellant argues the trial court committed reversible error by allowing the autopsy surgeon to testify about the angle at which the shot pellets entered the victim.

At trial, the State established Dr. Swanson's expertise in his field and later moved for the admission of Exhibit No. 18 into evidence. Exhibit No. 18 was an autopsy photograph of the victim's chest cavity. The organs had been removed and a ruler was inserted through the chest cavity to the spinal column to demonstrate the angle at which the shot pellets travelled through the body. The prosecutor asked Dr. Swanson, based upon his expertise, his opinion regarding the angle of the gun and the doctor responded, "It doesn't require any medical training and the jury has already seen the photographs. Anyone can see there is only one possible way in lying down. The shotgun could only go this direction (indicating)[.] It doesn't require special training to see that." He then gave his opinion explaining the possible positions of the victim's body at the time she was shot.

Appellant contends the admission of Dr. Swanson's testimony regarding the angle of the entry wound was improper because he was not shown to be a ballistics expert.

[5] The determination of whether a witness is qualified to testify as an expert is within the sound discretion of the trial court, whose ruling will not be disturbed absent an abuse of discretion. *Ford v. State* (1988), Ind., 521 N.E.2d 1309. In order to qualify as an expert, the subject matter must be related to some scientific field beyond the knowledge of the average lay person, and the witness must have sufficient skill, knowledge or experience in the field to make it appear that the witness's opinion or inference will aid the trier of fact. No precise quantum of knowledge is

required if the witness shows a sufficient acquaintance with the subject. *Fox v. State* (1987), Ind., 506 N.E.2d 1090.

■ Dr. Swanson testified that he had a bachelor of arts degree, a master of science degree, and was a medical doctor; he had been a pathologist for 25 years and he had performed over one thousand autopsies. We find his expertise was sufficiently established at trial, and the fact that he was not a ballistics expert went to the weight of his testimony and not its admissibility. *Id.*

Appellant contends expert testimony is required only when men of ordinary experience are unable to understand a particular matter, and by Dr. Swanson's own remark, it is evident that the angle of entry was not based upon expertise. Appellant concludes Dr. Swanson's testimony about the possible body positions was erroneously admitted and the State was improperly asking Dr. Swanson to interpret the crime scene as depicted by the body of the victim.

■ Expert testimony is inappropriate and may be excluded when it concerns matters within the common knowledge and experience of ordinary persons and which the jury may determine as well as the expert. *Grimes v. State* (1983), Ind., 450 N.E.2d 512. However, even if evidence is not beyond the knowledge and expertise of the average juror, the expert may nevertheless testify concerning his special knowledge of the subject. *Summers v. State* (1986), Ind. App. 495 N.E.2d 799.

■ Clearly, Dr. Swanson's testimony taken as a whole was beyond the common knowledge and experience of the average lay person. There was no error in allowing him to testify about the angle of the wound.

Appellant complains that Dr. Swanson's testimony about the possible positions of the victim's body also was an invasion of the province of the jury.

■ Though some jurors also may have been able to envision the different possible body positions, Dr. Swanson's testimony was an aid in helping the jury understand the various possibilities. We find no abuse of trial court discretion.

Appellant argues his conviction must be reversed because the evidence was insufficient to sustain the verdict. He asserts that the testimony of the three boys was inherently unreliable considering the variations in their statements to police, their testimony at trial, and the conflicts in their testimony during direct and cross-examination.

At the time of trial, two of the witnesses were seven years old and one was eleven years old. The victim's seven-year-old son was asked whether he saw his mother fall to the floor and he responded, "When he shot her." Then he was asked whether he saw her fall, and he said, "No." There was also inconsistent testimony about the number of shots the witnesses heard and which light in the house was on at the time.

On a claim involving the sufficiency of the evidence, this Court will not reweigh the evidence nor judge the credibility of the witnesses. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670. However, appellant analogizes his case to *Thomas v. State* (1958), 238 Ind. 658, 154 N.E.2d 503.

In *Thomas,* the appellant's conviction was reversed despite the testimony from two young girls claiming he had molested them in a park because there was unimpeachable evidence that he had been working in a factory at the time of the alleged offense.

■ The inconsistencies in appellant's case do not rise to the level of those in *Thomas.* In appellant's case, the testimony established that an argument had occurred before the shooting, appellant confessed to the shooting, and his exculpatory version of the story was contradicted by the pathologist's testimony concerning the angle of the wound. We find the evidence is sufficient to sustain appellant's conviction. *Kremer v. State* (1987), Ind., 514 N.E.2d 1068.

Appellant argues the trial court abused its discretion in allowing into evidence State's Exhibit 4, a diagram of appellant's home.

Officer Schollian testified that Detective Sam Johnson took measurements and made a rough drawing of the crime scene. From that information, Officer Schollian drew a diagram which included the layout of appellant's home and the positioning of the shotgun, spent shells, victim and appellant in the house. Appellant objected to Officer Schollian's diagram on the ground that it contained items not found in Detective Johnson's drawing and did not accurately reflect his original drawing. His objection was overruled, and upon admission of the diagram, the trial court stated,

"In putting the diagram into evidence, I'd just indicate to the jury that the diagram itself is not quote 'independently' a piece of evidence. The sole purpose for producing the diagram is to help you better understand oral testimony.

So it's the oral testimony that is—that you are to concern yourself with . . . the diagram is only there to help aid you or help you understand oral testimony."

Appellant cites testimony which showed certain items were missing from the diagram such as a telephone, a lamp, and a chair, and he contends items were not drawn to scale. He claims the improper admission of the diagram was reversible error because the positioning of objects and persons at the crime scene was crucial to his case.

The admission of a diagram is within the trial court's discretion, and its decision will be reversed only for an abuse of that discretion. Even a diagram not drawn to scale may be admitted if it is sufficiently explanatory or illustrative of relevant testimony to be of potential help to the trier of fact. *Taylor v. State* (1987), Ind., 511 N.E.2d 1036.

Exhibit No. 4 was utilized in testimony and was an aid to the jury. Considering the trial court's admonishment, we find no abuse of the trial court's discretion in its admission.

Appellant makes the argument that the admission of the diagram constituted hearsay. However, no such objection was made at trial. Appellant cannot base his current allegation of error on an objection made at trial which bears no relation to his complaint on appeal. *Lewis v. State* (1987), Ind., 511 N.E.2d 1054.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.