James I. HAMPTON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 27A02–9107–CR–314 [1].

Court of Appeals of Indiana,
First District.

March 19, 1992.
Transfer Denied May 7, 1992.

1. This case was transferred to this office February 5, 1992 by direction of the Chief Judge.

Susan K. Carpenter, Public Defender of Indiana and David P. Freund, Deputy Public Defender, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen. of Indiana and Lisa M. Paunicka, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

James I. Hampton appeals from a jury trial conviction of murder for which he received a fifty (50) year sentence. On appeal, he claims that the evidence is insufficient to support his conviction, that the trial court erroneously refused his instruction on reckless homicide as a lesser included offense, that the trial court improperly allowed expert testimony on blood splatter analysis because it is not generally recognized as reliable, and that his sentence is manifestly unreasonable. We affirm.

The evidence reveals that Hampton, his wife, and his son all lived with Hampton's father, who had a history of abuse of prescription drugs and alcohol. One night, Hampton arrived home late to find his father intoxicated. Hampton argued with his father because his father had urinated on the bathroom floor. The two exchanged blows, and Hampton retired to his bedroom. Later, Hampton returned to the living room and beat his father to death with a post from the banister.

## I.

### The evidence is sufficient.

The State charged that Hampton knowingly killed his father. Hampton claimed his father attacked him and he defended himself with the post. The police found the post hidden under a shed in the yard and found Hampton had washed his clothes after the killing. The State introduced evidence that the father was sedated with alcohol and prescription drugs at the time of the beating and that the father had a disabled leg.

Hampton's argument on this issue is nothing more than a lengthy invitation to reweigh the evidence and to rejudge the credibility of the witnesses. He emphasizes his evidence that the father was sober enough to be abusive and could walk well enough to attack him. He claims his father hit him and threatened to cut him with a knife. He also contends the evidence also fits his version of the events. Given the evidence, the jury could rightly conclude either that Hampton did not act without fault, as he was mutually aggressive, or that Hampton had no reasonable fear or apprehension of death or great bodily harm, as the father was sedated and disabled. We will not reweigh the evidence.

## II.

### The trial court properly refused the reckless homicide instruction.

Hampton claims the trial court should have given his instruction on reckless homicide as a lesser included offense of murder. However, without any evidence of reckless acts, there is no basis for giving an instruction on reckless homicide. *Macon v. State* (1988), Ind., 529 N.E.2d 343. Here, by Hampton's own admission, he deliberately hit his father with a post three times. He did not claim the death was accidental due to a reckless act on his part but claimed the deliberate beating occurred because he feared for his life and was defending himself. The trial court committed no error.

## III.

### The trial court properly allowed testimony about bloodstain analysis.

Hampton claims bloodstain analysis is not a field of expertise which is generally recognized as reliable. He therefore contends the trial court should not have allowed expert testimony on the subject. The State's expert testified about where the father was located in the room, how high his head was above the floor, and the minimum number of blows struck.

The determination of whether a witness is qualified to testify as an expert is within the sound discretion of the trial court, whose ruling will not be disturbed

absent an abuse of discretion. *Wissman v. State* (1989), Ind., 540 N.E.2d 1209. In order to qualify as an expert, the subject matter must be related to some scientific field beyond the knowledge of the average lay person, and the witness must have sufficient skill, knowledge or experience in the field to make it appear that the witness' opinion will aid the trier of fact. No precise quantum of knowledge is required if the witness shows a sufficient acquaintance with the subject. *Id.* Expert testimony is inappropriate and may be excluded when it concerns matters within the common knowledge and experience of ordinary persons and which the jury may determine as well as the expert; however, even if the evidence is not beyond the knowledge and expertise of the average juror, the expert may nevertheless testify concerning his special knowledge of the subject. *Id.*

Two Indiana decisions have addressed whether a person had sufficient expertise to testify about blood spatter as an expert. See *King v. State* (1988), Ind., 531 N.E.2d 1154; *Fox v. State* (1987), Ind., 506 N.E.2d 1090. Although possibly inherent in them, these decisions did not, however, address whether blood spatter is a subject related to some scientific field either beyond the knowledge of the average lay person or which would assist the trier of fact in understanding the evidence or deciding a factual issue.

▊ The record reveals that Sergeant Malone had been a Field Technician for eighteen years and was the supervisor of five other technicians. In 1981, he was sent to a school for blood flight interpretations given by a noted expert in the area of blood flight. Malone also assisted another prominent expert on blood flight analysis give a blood flight seminar in the State of Indiana, where they trained other officers in blood flight analysis. Since he became a technician, Malone saw and diagramed over one hundred homicide scenes. He testified that blood is different from other liquids in that it consists of cells and has strong molecular bonds. As a result, when blood hits an object, it will show a definite directionality. If the blood hits at a 90 degree angle, it will show a circular spot; but if it hits at an angle different from 90 degrees, it will "tail" in the direction the blood is moving.

▊ Blood spatter analysis may be reduced to common, fundamental sciences, such as mathematics, chemistry, and physics. Because of its physical properties, blood which has been put in motion reacts in a certain, predictable manner when it hits a surface. Portions of the opinion testimony were beyond the common knowledge and experience of the average lay person, but portions of it were also inherently understandable. We conclude the evidence has been sufficiently shown to be reliable. They are a part of everyday experience and could have aided the jury in its search for truth. Likewise, a satisfactory foundation for the admission of the evidence was made. Accordingly, the trial court abused no discretion when it allowed Malone to give his opinions on the subject of blood spatter.

## IV.

### The sentence is not manifestly unreasonable.

▊ A person who commits murder shall be imprisoned for a fixed term of forty years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigating circumstances. Ind.Code 35–50–2–3(a). The trial court specifically found the aggravating factors outweighed the mitigating factors and gave Hampton an enhanced, fifty (50) year sentence.

▊ A sentence authorized by statute will not be revised except where it is manifestly unreasonable in light of the nature of the offense and the character of the offender. A sentence is not manifestly unreasonable unless no reasonable person could find it appropriate to the particular offense and offender for which it was imposed. Ind. Appellate Rule 17(B).

The trial court found the following to be aggravating circumstances:

(1) Defendant violated the conditions of his probation from Wabash County when he committed this crime.

(2) Defendant has a history of criminal activity represented by a theft conviction in the Wabash Circuit Court on August 1, 1989.

(3) Imposition of a reduced sentence would depreciate the seriousness of this crime because the manner in which Defendant murdered the victim is especially heinous. The Defendant's version that he struck the victim only three times is inconsistent with the physical evidence of this crime: the victim was beaten beyond recognition about the head and face with a heavy, blunt instrument. The grotesque condition of the victim could have come only from multiple, repetitious blows, well beyond what would have been necessary for the Defendant to have repelled the victim's attack from which Defendant contends he was protecting himself. It is this Court's opinion that the condition of the victim could not have resulted from only three blows which the Defendant insists he struck.

(4) There was evidence that the victim was physically infirmed (sic) and had difficulty walking which, if true, belies Defendant's self defense theory.

(5) Defendant contends that he was fearful of his father, the victim, because of a prior history of lifelong beatings and abuse inflicted upon him by his father; if Defendant was so fearful of his father then one must ask why he continued to reside with him.

The court found the following mitigating circumstances:

(1) Defendant is a young person, only 19 years of age.

(2) A long term of imprisonment will result in undue hardship to Defendant's two children.

(3) There was evidence of a past history of abuse and beatings inflicted upon the Defendant by the victim and the possibility that the victim may have provoked the Defendant's attack. There was also evidence that the Defendant is suffering from a previous head injury and that he may have been attempting to protect himself from a blow to the head which could have resulted in further serious injury or death.

In his argument on this issue, Hampton gives his own weight to the aggravating and mitigating factors. He attacks the relative weights of the trial court's circumstances and concludes a manifestly reasonable sentence would be thirty (30) years.

The trial court's factors are supported by the evidence, though not Hampton's version of it. Hampton does not attack the first two aggravating factors. Numerous photographs, medical evidence, and other testimony support the rest. Hampton identifies no potential mitigating factor which the trial court did not consider.

Reasonable persons could find a fifty (50) year sentence appropriate for Hampton and the murder. The sentence is not manifestly unreasonable.

Judgment affirmed.

BAKER, J., concurs.

SULLIVAN, J., concurs in part and concurs in result in part with separate opinion.

SULLIVAN, Judge, concurring in part and concurring in result in part.

I fully concur with respect to Issues I, II and IV. As to Issue III, I concur in result and agree that it was appropriate to admit into evidence the testimony of Sergeant Malone concerning blood spatter analysis. I disagree, however, with the majority's statement of the test by which admissibility of expert testimony is determined.

The majority quotes from *Wissman v. State* (1989) Ind., 540 N.E.2d 1209, 1213 as follows:

"Expert testimony is inappropriate and may be excluded when it concerns matters within the common knowledge and experience of ordinary persons and which the jury may determine as well as the expert. *Grimes v. State* (1983), Ind., 450 N.E.2d 512. However, even if evidence is not beyond the knowledge and expertise of the average juror, the expert may

nevertheless testify concerning his special knowledge of the subject. *Summers v. State* (1986), Ind.App. 495 N.E.2d 799."

It is clear, however, that the last sentence quoted is dictum because in *Wissman* the opinion held that the testimony in question "[c]learly ... was beyond the common knowledge and experience of the average lay person." 540 N.E.2d at 1213.

In any event, the dictum quoted appears to misinterpret the holding of *Summers v. State* (1986) 1st Dist.Ind.App., 495 N.E.2d 799. The *Summers* case created a test for admissibility of expert testimony different from the previously existing traditional test. The *Summers* standard is not a part of the test as enunciated in *Grimes v. State* (1983) Ind., 450 N.E.2d 512, which requires that the testimony must concern matters outside the common knowledge and experience of ordinary persons.

That the *Summers* test was intended to be different from and to replace the former test is made clear from *Cox v. American Aggregates Corp.* (1991) 1st Dist.Ind.App., 580 N.E.2d 679 at 686, written by Chief Judge Ratliff, who authored *Summers:*

"It has been said previously, that to be admissible the subject matter of an expert's testimony must be beyond the understanding of laymen. [Citations omitted.] However, in *Summers,* we rejected this traditional test and said that the proper and modern test is whether the expert has some special knowledge which would assist the trier of fact in understanding the evidence or deciding a factual issue."

In any event, as noted by the majority here, the questioned testimony meets the traditional test as well as the new *Summers* test. It is therefore not essential that we resort to the *Summers* test for admissibility. For this reason and in this light, I concur in the affirmance of the judgment.