John J. FARRELL, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 79A02–9112–CR–560.

Court of Appeals of Indiana, Second District.

April 5, 1993.

Cynthia L. Garwood, Cooke Laszynski and Moore, Lafayette, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

John Farrell appeals his conviction of Kidnapping, a Class A felony.[1] Upon appeal, Farrell presents six issues for our review. We restate them as follows:

I. Whether the trial court abused its discretion in excluding the testimony of Farrell's expert upon the subject of the reliability of eyewitness identification;

II. whether the photographic array from which the victim identified Farrell's photo was improper, and, if so, whether the victim's in-court identification of Farrell was improper;

III. whether the trial court improperly allowed the jury to continue its deliberations;

IV. whether the trial court improperly denied Farrell's motions for mistrial;

V. whether Farrell received ineffective assistance of trial counsel; and

VI. whether Farrell's sentence was manifestly unreasonable?

We affirm.

The facts most favorable to the judgment reveal that in the early morning hours of August 18, 1990, Gina Handley was driving her mother's automobile in Lafayette, Indiana. Handley drove to a pay phone in a lighted parking lot, got out of her car, and placed a phone call to a friend. After hanging up the telephone, Handley re-entered her car and was arranging items on the seat beside her when Farrell approached the car from behind, announced that he had a gun, and ordered Handley to move over. When Handley did not immediately comply with his demand, Farrell moved the gun close to Handley's face and she moved over into the front passenger seat. Farrell got into the driver's seat and ordered Handley to place her hands behind her head and to put her head down between her knees. As these events transpired, Handley was able to observe Farrell's face and appearance. After Handley complied with his demand, Farrell drove the car away.

While Farrell was driving the car, Handley would periodically attempt to raise her head. However, each time that she did, Farrell would point the gun at the side of her head and threaten to kill her. Nevertheless, she did manage several times to raise her head long enough to get a clear look at Farrell. Finally, when Farrell slowed the car at one point, Handley jumped from the car and escaped.

## I.

### EXPERT TESTIMONY UPON EYEWITNESS IDENTIFICATION RELIABILITY

Handley's testimony identifying Farrell as her kidnapper supplied an important item of evidence against Farrell. Farrell therefore sought to introduce the testimony of an expert witness with extensive credentials on the subject of eyewitness identification, whose proposed testimony would have addressed the unreliability of such eyewitness identification. The State objected to such expert testimony on three grounds: 1) the reliability of eyewitness testimony is not a subject beyond the ken of the average juror; 2) the proposed testimony would unduly confuse the jury; and 3) such testimony has not been generally accepted by courts. The trial court excluded the testimony upon the grounds that it would not assist the jury, and that it had

---

1. I.C. 35–42–3–2 (Burns Code Ed.1985). Although the jury returned guilty verdicts upon each of six counts, the trial court entered judgment only upon the kidnapping verdict.

not gained acceptance in its field.[2] Farrell argues upon appeal that such testimony should have been permitted.

A trial court is granted discretion when ruling upon the admissibility of expert testimony, and we will not disturb the ruling absent a showing of abuse of discretion. *Wissman v. State* (1989) Ind., 540 N.E.2d 1209, 1212. Neither party to this appeal brings to our attention an Indiana case discussing this issue, nor does our research reveal any. However, much has been written, both in published opinions from other jurisdictions and in legal journals, upon the subject of expert testimony regarding the reliability of eyewitness identification.

The arguments offered by the parties in the instant case in support of, and against, the admission of such testimony are the same as those discussed and analyzed in the aforementioned opinions and journals. To summarize, the first part of the analysis concerns the admissibility of expert testimony in general. Included is an application of the so-called *"Frye test"* for admissibility of expert testimony concerning a scientific principle or procedure. This test was first enunciated in *Frye v. United States* (1923) D.C.Cir., 293 F. 1013, and requires that "the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." *Id.* at 1014.[3] However, courts have applied the test unevenly because of the difficulty of resolving such questions as how to define the particular field and how to tell when the procedure or principle has been generally accepted.

Various federal cases have concluded that the *Frye* test has been superseded by the Federal Rules of Evidence, particularly Rules 702 and 703. *See U.S. v. Williams* (1978) 2d Cir., 583 F.2d 1194. Some jurisdictions seem to apply a test even more stringent than *Frye*, at least with respect to evidence involving laboratory testing. *See U.S. v. Two Bulls* (1990) 8th Cir., 918 F.2d 56; *People v. Minori* (1980) N.Y., 51 N.Y.2d 930, 434 N.Y.S.2d 985, 415 N.E.2d 973. The Seventh Circuit, however, continues to adhere to the *Frye* rule. *See U.S. v. Smith* (1989) 7th Cir., 869 F.2d 348. Nevertheless, as noted in *U.S. v. Jakobetz* (1992) 2d Cir., 955 F.2d 786, *cert. denied*, —— U.S. ——, 113 S.Ct. 104, 121 L.Ed.2d 63, the crucial factor might well be whether the evidence will assist the trier of fact to understand the evidence or to determine a fact in issue. This premise underlies the decision in *Summers v. State* (1986) 1st Dist. Ind.App., 495 N.E.2d 799, *trans. denied.*

Less than one year later a subsequent case was decided by the very same panel and, despite an extensive separate opinion by Chief Judge Ratliff, the author of *Summers*, refused to follow the *Summers* test. *Hughes v. State* (1987) 1st Dist. Ind.App., 508 N.E.2d 1289, *trans. denied. Hughes* instead reverted to the traditional standard requiring that the subject matter of the expert testimony be beyond the knowledge of the average juror. Still later, on February 19, 1990, the First District panel returned to the *Summers* test in *Rubin v. Johnson* (1990) 1st Dist. Ind.App., 550 N.E.2d 324, *trans. denied.* Only nine days later, February 28, 1990, Chief Judge Ratliff, participating with the Fourth District in *Brinegar v. Robertson Corp.* (1990) 4th Dist. Ind.App., 550 N.E.2d 812, *trans. denied*, felt compelled to point out the distressingly unsettled state of the law:

"Our supreme court appeared to have adopted the *Summers* test in *Mihay v. State* (1987), Ind., 515 N.E.2d 498. Un-

---

**2.** Specifically, upon granting the State's motion to exclude the testimony, the court stated:

"[M]y ruling on [the testimony] is that it's not widely shared sufficiently to get—be of probity to the jury in any way that would help them to make a decision in this case." Record at 1134.

The trial court did not elaborate further upon its basis for granting the State's motion. Al-

though the above-quoted passage does not state with perfect clarity the trial court's basis, our interpretation of the court's reasoning is buttressed by the fact that the State argued both bases in support of the motion to exclude.

**3.** Indiana adopted the *Frye* test, quoting with approval the above-quoted excerpt, in *Cornett v. State* (1983) Ind., 450 N.E.2d 498, 503.

fortunately, as pointed out by Judge Miller in *Estate of Hunt v. Board of Commissioners of Henry County* (1988), Ind. App., 526 N.E.2d 1230, our supreme court in *Brooke v. State* (1987), Ind., 516 N.E.2d 9, reverted to the old rule. Again, in *Henson v. State* (1989), Ind., 535 N.E.2d 1189, the court reiterated the traditional rule. However, in *Wissman v. State* (1989), Ind., 540 N.E.2d 1209, 1213, our supreme court stated:

> 'Expert testimony is inappropriate and may be excluded when it concerns matters within the common knowledge and experience of ordinary persons and which the jury may determine as well as the expert. *Grimes v. State* (1983), Ind., 450 N.E.2d 512. However, even if evidence is not beyond the knowledge and expertise of the average juror, the expert may nevertheless testify concerning his special knowledge of the subject. *Summers v. State* (1986), Ind.App., 495 N.E.2d 799.'

Therefore, I remain steadfast in my belief that the rule announced in *Summers* is the proper test for the admissibility of expert testimony. My opinion is buttressed further by the recognition of the holding in *Summers* in Justice Givan's opinion in Wissman." 550 N.E.2d at 819–820.

See also *Peavler v. Board of Commissioners of Monroe County* (1990) 1st Dist. Ind. App., 557 N.E.2d 1077, *trans. denied,* approving the *Summers* test, as compared with *Spaulding v. State* (1989) 1st Dist. Ind.App., 533 N.E.2d 597. *trans. denied.* The state of the law is no less unsettled today. *See Pedrick v. State* (1992) 5th Dist. Ind.App., 593 N.E.2d 1213, 1218, 1221; *Hampton v. State* (1992) 1st Dist. Ind. App., 588 N.E.2d 555, 559–60, *trans. denied.*

Our Supreme Court has also appeared to both accept and reject the *Summers* test. In July of 1987, in *Reichard v. State* (1987) Ind., 510 N.E.2d 163, the Court held that expert testimony is inappropriate unless the matters are beyond the common knowledge and experience of the ordinary juror. This is the traditional test; yet, the court cited *Summers* for the proposition. In No-

vember of the same year, the Court decided *Mihay v. State* (1987) Ind., 515 N.E.2d 498 and, citing *Summers,* adopted its criterion and held that the evidence is admissible if it "would aid the jurors in understanding the facts". 515 N.E.2d at 500.

The second part of the analysis necessary in the case before us involves application of the *Frye* test, specifically to the field of eyewitness reliability testimony. The parties to the instant appeal offer cases in support of both propositions: that is, that eyewitness reliability testimony should be accepted, and that it should not. This reflects that the current state of the law upon this issue is in flux. Some jurisdictions require that such testimony be allowed, *see, e.g., United States v. Downing* (1985) 3d Cir., 753 F.2d 1224, and some deem it properly excludable, *see, e.g., United States v. Fosher* (1979) 1st Cir., 590 F.2d 381. Our review of the literature and relevant case law reveals that the question is by no means resolved. However, if there is an identifiable trend, it is in favor of allowing the testimony. This may result from the fact that the subject matter addressed in the field has developed sufficiently through research and study.

Be that as it may, we leave the resolution of the question of the admissibility of expert testimony upon the reliability of eyewitness identification to another day because, even assuming that the exclusion was error, the error here was harmless.

In *United States v. Smith* (1984) 6th Cir., 736 F.2d 1103, *cert. denied,* 469 U.S. 868, 105 S.Ct. 213, 83 L.Ed.2d 143, the court addressed the same question and concluded: "The day may have arrived, therefore, when [expert testimony about eyewitness reliability] can be said to conform to a generally accepted explanatory theory." *Id.* at 1107. The court nevertheless concluded that excluding the testimony, even if erroneous, was harmless error. This conclusion was based upon the court's evaluation of the strength of the particular eyewitness evidence against the defendant, which included the testimony of three eyewitnesses. The court ultimately decided that the exclusion did not prejudice the

defendant because, *inter alia*, "[t]he expert testimony would have done little to discredit the testimony of three eyewitnesses, each of whom independently identified [the defendant] at a line-up." 736 F.2d at 1107.

We do not interpret the *Smith* case to make the harmless error determination turn upon the number of eyewitnesses called. Rather, we view the determination to hinge upon whether the identification evidence was strong or was otherwise corroborated. In such case, a conclusion is reasonable that expert testimony challenging the general reliability of eyewitness testimony would not have changed the verdict. If so, exclusion of the expert testimony is harmless error. The latter situation exists in the instant case.

The record reveals that Handley had several opportunities over a period of fifteen to twenty minutes to observe Farrell's appearance from close range with adequate lighting. Following her escape and before she identified Farrell's photograph, Handley was able to provide police with a detailed description of the kidnapper's height, weight, and appearance. Her description was specific enough that, in view of the circumstances of the abduction, we conclude that Handley had adequate opportunity to view her abductor. Moreover, the State presented strong circumstantial evidence in addition to the eyewitness testimony, including evidence that the kidnapper's gun, which Handley described in detail, was a gun that had been stolen some months earlier by Farrell. Thus Farrell's conviction was not based solely upon eyewitness testimony. We will not hold the exclusion of the expert testimony to be reversible error.[4]

## II.

### PHOTOGRAPHIC ARRAY AND IN–COURT IDENTIFICATION

Less than twenty-four hours after the incident, Handley was asked to view a photographic array consisting of three photographs. She was told that the array may or may not contain a photograph of the suspect. Handley identified Farrell's photo as being that of her abductor. Farrell complains that the array was impermissibly suggestive, thus tainting Handley's in-court identification. Specifically, Farrell complains that the array was suggestive because (1) it contained only three photographs, and (2) the two "foils" resembled neither each other nor Handley's description of her abductor.

■ Farrell correctly identifies our standard for reviewing claims of error pertaining to pretrial identification of suspects, including impermissibly suggestive procedures. We review the totality of circumstances surrounding the out-of-court identification to determine whether the complained-of procedure was conducted in such a fashion as to lead the witness to a mistaken identification. *Brooks v. State* (1990) Ind., 560 N.E.2d 49.

■ Initially, we address Farrell's contention that Handley was informed by police prior to viewing the array that the suspect's photo was included in the array. To the contrary, although she was informed both that the police had developed a suspect and that they would like for her to view an array, Handley was specifically told that the photo of the suspect may or may not be included in the array. This indicates that the police merely indicated that it was *possible*, not certain, that the suspect's photo was included in the array. Surely the possibility that an array *may* contain an identified suspect's photo is a reasonable assumption to be made by witnesses about to view an array, and properly so. There was no error in this regard.

■ Farrell contends that the array was fatally flawed because it contained photographs of only three individuals. Our Su-

---

4. We do, however, suggest that Indiana trial courts carefully consider the matter. And in order to give the jury the greatest amount of assistance in weighing the evidence, trial courts might well be favorably inclined toward the admission of such expert testimony in a particular circumstance. Such circumstance would clearly seem to exist where only one or two eyewitnesses testify and when the testimony is uncertain, equivocal or contains inconsistencies.

preme Court has stated that "a line-up of only three or four persons is generally considered inadequate", and has recommended that it contain at least five or six persons. *Porter v. State* (1979) 272 Ind. 267, 397 N.E.2d 269, 271. However, the *Porter* court also concluded that identification of an individual in a line-up of less than five persons is not inadmissible *per se*. Admissibility in such cases is determined after considering the totality of circumstances. *Id.* 397 N.E.2d at 271. The key determination to be made here is whether the composition of the array had probable influence upon Handley in identifying Farrell as her attacker.

Handley provided a detailed description of her attacker before she viewed the array. The record indicates that Handley's identification was unequivocal. These facts, coupled with her plentiful opportunities to view her attacker during the abduction, lead us to conclude that the absence of two extra foils in the photo array did not cause Handley to identify Farrell's photo in the array. *See Porter, supra,* 397 N.E.2d 269.

In view of our determination that the array was not impermissibly suggestive, we need not address Farrell's contention that the in-court identification was tainted by the flawed photo array.

### III.

### *JURY DELIBERATION*

The jury began its deliberations in the instant case at 8:15 P.M., following the third day of trial. Very early the next morning (the record does not reveal the exact time) the jury informed the trial court that it had not yet reached a verdict. The court asked the jury foreman whether the jury could reach a verdict with further deliberation. The foreman answered in the affirmative. After rereading the instructions and reviewing the evidence, the jury again resumed to its deliberations. Also at this time, the jury ordered breakfast. At approximately noon that same day, the foreman reported that the jury had reached a verdict upon some, but not all, of the six counts. The following exchange ensued:

"THE COURT: Have you reached a verdict on each of the six counts?

FOREPERSON: No, Your Honor.

THE COURT: Okay, are you at a point where you've reached agreement on any of the counts?

FOREPERSON: Yes, Your Honor.

THE COURT: Okay, and you still have some left that—you feel that any additional time—with additional time that you could reach a unanimous agreement as to all counts?

FOREPERSON: I think that's quite possible.

THE COURT: Okay, you've been working awfully hard, and do you want something to—you want us to have dinner brought in?

FOREPERSON: (No Audible Answer)

THE COURT: Or do you just want a little bit more time to iron things out—what—what's—as the foreperson what's your feeling on it?

FOREPERSON: Your Honor I think if [sic] we would need to have lunch brought in.

\*   \*   \*   \*   \*   \*

THE COURT: And you feel that with—if we bring dinner in or lunch in that you can continue to make progress and be able to make progress toward agreement on each of the counts, is that what I hear you telling me?

FOREPERSON: Yes, Your Honor."
Record at 1269–70.

After dismissing the jury, the court conferred with counsel. Counsel agreed that the jury be provided lunch and allowed to rest at a motel if it did not reach a verdict within "the next couple hours". Record at 1274. Later,[5] the jury returned with a verdict of guilty upon all counts. Farrell

---

**5.** The record does not reveal how long after the second break the jury reached its verdict. In his appellate brief, the defendant states that it was "two to three hours later". Brief of Appel-

lant at 36. Assuming the statement is correct, this is within the time frame set by the court and agreed upon by the parties.

argues that the court erred in allowing the jury to continue deliberations without rest.

■ The decision of how long a jury should be allowed to deliberate is committed to the discretion of the trial court, and will be reversed only for abuse of discretion. *Parrish v. State* (1987) Ind., 515 N.E.2d 516, 520. In order to prevail upon such a claim, the defendant must also show he suffered prejudice. *King v. State* (1988) Ind., 531 N.E.2d 1154.

■ In the instant case, although the jury deliberated for a considerable length of time, the trial court, aided by the foreman's input, was in the best position to evaluate the condition of the jurors regarding their fitness to continue deliberations. *King, supra,* 531 N.E.2d at 1161. The jury indicated during both breaks that it would be able to reach a verdict if allowed to continue, and expressed a willingness to continue deliberating until it reached a verdict. In addition, the trial court polled each of the members of the jury as to whether he or she individually agreed with the verdict and all answered in the affirmative. The trial court did not abuse its discretion in allowing the jury to continue deliberating until the verdicts were reached.

## IV.

### *MOTIONS FOR MISTRIAL*

During trial, Farrell tendered two separate motions for mistrial based upon allegations of prosecutorial misconduct. The court denied both motions.

■ A trial court has broad discretion in determining whether to grant a motion for mistrial, and will be reversed only for abuse of discretion. *Davidson v. State* (1991) Ind., 580 N.E.2d 238. A mistrial is an extreme remedy in a criminal case and should only be granted when no other remedy can cure the error. *Schlomer v. State* (1991) Ind., 580 N.E.2d 950.

■ The first instance of which Farrell complains occurred during the State's direct examination of Detective Jerry Loy. Detective Loy was testifying about the progression of his investigation of the events when Farrell's counsel objected, arguing that Detective Loy was about to testify on the subject of Farrell's prior acts. The prosecution responded that it was "aware of the Motion in Limine" that had been filed in Farrell's case. Record at 856. Outside the jury's presence, Farrell's counsel moved for mistrial based upon the State's reference to the motion in limine.

The State did not at any time violate the Order in Limine by referring to Farrell's prior history of criminal conduct. In fact, the subject of Farrell's prior acts was mentioned only by Farrell's counsel, not the State. It is difficult to imagine that these comments could have been understood by the jury such that Farrell was placed in a position of grave peril. Moreover, the State's mere mention of the Motion in Limine is not grounds for mistrial. The trial judge reasonably noted that the jurors probably did not even know the meaning of the term. Farrell cites no case, and we find none, that supports the proposition that mere mention of a motion in limine is automatic ground for mistrial. Rather, the trial court must evaluate whether the defendant was prejudiced by the reference. In the instant case, the trial court believed that the jury had not been apprised of information which the Order in Limine sought to prohibit, and concluded that it was best to proceed without further broaching the subject with the jury. There was no abuse of discretion.

■ The second incident prompting a motion for mistrial came during the testimony of Officer Brian Baker, the police officer who arrested Farrell. Officer Baker was giving narrative testimony regarding the arrest when he stated: "So he was placed under arrest at that time for being in possession of that stolen vehicle. Additionally at that point in time I read him the Miranda warning and asked if he had any desire to make any statements at that time, he said no." Record at 1031. At that point defense counsel objected and, after moving to the judge's chambers, asked the court to declare a mistrial. Farrell argues upon appeal that Officer Baker's statement "was a direct reference to the Defendant's deci-

sion to exercise his rights not to testify". Brief of Appellant at 40. Farrell correctly notes that the State may not comment upon a defendant's decision to not testify at trial. Such comments are regarded as impingements upon a defendant's constitutional right to not testify at trial. *Bernard v. State* (1989) Ind., 540 N.E.2d 23.

Initially, we observe that Officer Baker's statement, though inappropriate, was not, in context, reasonably to be considered as a reference to the defendant's failure to testify at trial. The officer was describing the events that transpired during the course of Farrell's arrest, and Farrell's refusal to make a statement was clearly placed in the context of the scene of his arrest. Moreover, the particular statement objected to by Farrell was virtually buried in Officer Baker's lengthy narrative of the events leading to Farrell's arrest, which minimized the prejudicial effects, if any, of the statement. This issue demonstrates the tactical danger inherent in permitting an adverse witness to engage in rambling or lengthy narrative testimony, but it does not give rise to a reversal of this conviction.

Finally, the trial court's remedial measure cured any harm. Generally, a prompt admonishment to the jury to disregard the improper testimony is sufficient to support a denial of a motion for mistrial. *Schlomer, supra,* 580 N.E.2d at 956; *see also Greer v. Miller* (1987) 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618. In the instant case, the trial court admonished the jury as follows:

"Ladies and Gentleman of the jury a few minutes ago the Officer indicated that he gave the defendant his Miranda rights and in substance said that the defendant chose not to give a statement, I want— I'm requesting that the jury disregard the wording after gave Miranda rights [sic], the defendant has no obligation to give a statement, he has a constitutional right not to give a statement, as all citizens do. I'm asking the Jury to completely disregard and to strike that statement made by the Officer." Record at 1035–36.

The admonishment was sufficient to cure the error. The trial court did not abuse its discretion in denying the second motion for mistrial.

## V.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Farrell argues that his counsel rendered ineffective assistance of counsel 1) in failing to request an admonishment when the prosecutor referred to Farrell's failure to present an alibi defense; and 2) in failing to timely move for a hung jury.

Claims of ineffective assistance of counsel are measured against the standard enunciated in *Strickland v. Washington* (1984) 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *Turner v. State* (1991) Ind., 580 N.E.2d 665, 668. In order to prevail, a plaintiff must prove deficient performance which prejudiced him. *Turner, supra,* 580 N.E.2d at 668. A defendant must also prove that but for counsel's errors at trial, the result would have been different. *Miller v. State* (1989) Ind., 541 N.E.2d 260, 262. Our review of such claims is highly deferential and counsel is presumed to have been competent. *Siglar v. State* (1989) Ind., 541 N.E.2d 944. This presumption may be overcome only by strong and compelling evidence of incompetence. *Jones v. State* (1989) Ind., 544 N.E.2d 492.

During closing argument, after recounting the evidence indicating Farrell's guilt, the prosecutor stated:

"It may be my only consistencies [sic] Ladies and Gentlemen but the fact remains that those are the evidence [sic] that was presented. There was no alibi evidence presented, nobody said he wasn't here at that time or place. We heard that he was there, you have to go by what's been presented in Court." Record at 1204–05.

Farrell contends that this was an impermissible reference to his decision to not testify at trial.

Our Supreme Court has stated: "Comment on the lack of evidence by the defense concerning otherwise incriminating evi-

dence against him is proper as long as the State focuses on the absence of any evidence to contradict the State's evidence and not on the accused's failure to testify." *Martinez v. State* (1990) Ind., 549 N.E.2d 1026, 1028. The prosecutor's comment in the instant case does indeed focus upon the lack of alibi evidence, and not upon the fact that Farrell himself did not testify. Thus, it was within the parameters set out in *Martinez*, and therefore was not reversibly improper.

Farrell contends that his trial counsel rendered ineffective assistance for failure to timely move for a mistrial upon inability of the jury to agree upon verdicts as to all counts. Although this question is somewhat different than the one previously addressed under Issue III, *supra*, our analysis of the earlier issue foreshadows our determination here. We concluded previously that the trial court did not abuse its discretion by allowing the jury to continue its deliberations. The decision whether to grant a motion for mistrial by reason of a hung jury is similarly committed to the sound discretion of the trial court and is reviewed for abuse of discretion. *Parrish, supra*, 515 N.E.2d 516. The trial court's decision in that regard is based upon the very same factors considered when deciding whether to allow the jury to continue deliberating. In the instant case, it may fairly be presumed that if the trial court was inclined to allow the jury to continue deliberating, it would not have been inclined to grant a motion for a mistrial premised upon an inability of the jurors to reach agreement. This is especially true where, as here, the jury consistently indicated its belief that it could reach a unanimous verdict if given more time. Farrell has failed to show that his motion would or should have been granted. There was no ineffective assistance of counsel. *Wallace v. State* (1990) Ind., 553 N.E.2d 456.

## VI.

### SENTENCING

Farrell contends that the sentence of forty-eight years with four years suspended is manifestly unreasonable. The presumptive sentence for Kidnapping is thirty years, with not more than an additional twenty years permitted for aggravating factors. I.C. 35–50–2–4 (Burns Code Ed.1985). When consecutive terms or enhanced sentences are imposed, as in the instant case, the record must disclose articulated facts supporting a finding that at least one of the aggravating circumstances listed in I.C. 35–38–1–7.1(b) (Burns Code Ed.1985) is present, or, at the court's discretion, that some other relevant factor or factors justify the punishment. *Ballard v. State* (1988) Ind., 531 N.E.2d 196, 197. Such determinations are reviewed for abuse of discretion. *Arthur v. State* (1986) Ind., 499 N.E.2d 746.

Before addressing those factors set out by the trial court which may support Farrell's sentence, we express our concern with respect to a perceived tendency on the part of trial courts to mechanically recite certain statutory language as justification for enhanced and consecutive sentences. In the instant case, the trial court commenced its pronouncement of sentence with a finding that Farrell is "in need of correctional or rehabilitative treatment best provided by [his] commitment to a penal facility", and that "[i]mposition of a reduced sentence or suspension of the sentence ... would ... depreciate the seriousness of the crime." Record at 1363. These phrases are drawn almost verbatim from I.C. 35–38–1–7.1 (Burns Code Ed.Supp.1992), which contains a list of criteria trial courts may consider when determining whether to impose consecutive sentences.

A determination that a reduced sentence would depreciate the seriousness of the crime is a valid aggravating factor only when the trial court is considering imposing a sentence of less duration than the presumptive sentence, *Shoup v. State* (1991) 2d Dist. Ind.App., 570 N.E.2d 1298, 1306, *trans. denied*, or the record reflects that the trial court considered this factor in rejecting imposition of a sentence of a lesser duration than the specific sentence actually imposed. *Evans v. State* (1986) Ind., 497 N.E.2d 919; *Lockard v. State* (1992)

1st Dist. Ind.App., 600 N.E.2d 985, 989. Nevertheless, trial courts sometimes mechanically, and without sufficient specificity, recite this factor when imposing enhanced or consecutive sentences.

██ Courts also frequently misuse the criterion that a defendant is in need of correctional and rehabilitative treatment best provided by a correctional facility. Trial courts' use of this factor generally amounts to little more than mechanical recitation of the language. However, "a mere recitation of the statutory factors is insufficient to support an enhanced sentence." *Shoup, supra,* 570 N.E.2d at 1306. This particular factor, when cited in support of an enhanced sentence, must be accompanied by specifically articulated facts supporting such a finding. *See, e.g., Shoup, supra* (court noted that child abuse defendant had attended classes on parenting prior to abuse episode). The trial court here articulated no such facts when referring to this factor, hence it is insufficient to support imposition of Farrell's enhanced sentence. However, notwithstanding that the aforementioned factors are insufficient as applied in the instant case, we conclude that the sentence is otherwise supported by legitimate factors.

██ The trial court noted the following factors in imposing the enhanced sentence: 1) Farrell lacks insight into his own behavior such that it is likely that he will engage in criminal activity in the future; and 2) Farrell committed several crimes during the incident in addition to the one upon which the court entered judgment. In view of the fact that even a single valid aggravating factor is sufficient to support an enhanced sentence, the trial court did not abuse its discretion in imposing the enhanced sentence. *Stewart v. State* (1988) Ind., 531 N.E.2d 1146, 1150.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., concurs.

HOFFMAN, J., concurs in result and files separate opinion.

HOFFMAN, Judge, concurring in result.

I concur in the result. However, the time has come for clarification rather than cogitation.

As noted by the majority, the decision whether to allow expert testimony lies within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Fox v. State* (1987), Ind., 506 N.E.2d 1090, 1095. Also as noted by the majority, mention of the *Frye* test has been conspicuously absent from some recent decisions by our Courts.

*See e.g. Valinet v. Eskew* (1991), Ind., 574 N.E.2d 283, 286;

*Peavler v. Board Com'rs* (1990), Ind. App., 557 N.E.2d 1077, 1083, *trans. den.* In *Hopkins v. State* (1991), Ind., 579 N.E.2d 1297, 1305, Justice Dickson's concurring opinion, joined by Justice Krahulik, calls into question the efficacy of the *Frye* test in Indiana. The opinion concludes:

"Considering the existing disagreement regarding whether the *Frye* reliability standard should govern admissibility, and the fact that neither of the parties in the present case presents a serious challenge to its acceptance in Indiana, the analysis employed by the majority should not be construed as an endorsement or rejection of the *Frye* methodology. Resolution of this important question remains for another day."

*Id.* at 1307.

Review of the cases reveals a general rule regarding the admissibility of testimony by experts. When the trial court determines the trier of fact will be assisted in understanding evidence or in determining a fact in issue, testimony of scientific, technical, or other specialized knowledge gained by a witness qualified as an expert through skill, experience, training or education is admissible. *See Summers v. State* (1986), Ind.App., 495 N.E.2d 799, 802–803, *trans. den.*

Although as noted in *Summers, supra,* 495 N.E.2d at 803, the present trend is toward allowing expert testimony if it will render assistance to the trier of fact, here the trial court did not abuse its discretion

in excluding the testimony addressing the unreliability of eyewitness identification. Such testimony is analogous to testimony regarding whether a witness is telling the truth. "No witness, whether lay or expert, is competent to testify that another witness is or is not telling the truth." *Stewart v. State* (1990), Ind., 555 N.E.2d 121, 125; *see also Ulrich v. State* (1990), Ind.App., 550 N.E.2d 114, 115.