Theodore PIWOWAR and Esther Piwowar, Appellants (Plaintiffs Below),

v.

WASHINGTON LUMBER & COAL COMPANY; Wheeling Corrugating Company, a Division of Wheeling Steel Corporation; and Wheeling-Pittsburgh Steel Corporation, Appellees (Defendants Below).

No. 3–778A177.

Court of Appeals of Indiana, Third District.

June 12, 1980.

Rehearing Denied July 16, 1980.

Rudolph Tanasijevich, Robert G. Berger, Hammond, for appellants.

Karen L. Hughes, Larry G. Evans, Hoeppner, Wagner & Evans, Valparaiso, for appellee Washington Lumber & Coal Co.

John Kappos, Kappos & Kautz, Merrillville, for appellees Wheeling Corrugating Co. and Wheeling-Pittsburgh Steel Co.

HOFFMAN, Judge.

The plaintiff in this case, Mr. Piwowar, is an experienced carpenter residing in Hammond, Indiana. On September 9, 1971, he was called to do some emergency work at an office in East Chicago which had been burglarized. In the course of his work, it was necessary for Mr. Piwowar to make a new frame for a door. He indicated to the owner of the business, Mr. Cacich, that he would require cut nails to attach the wood to the masonry. Since Mr. Piwowar did not have the nails with him, Mr. Cacich purchased some nails from Washington Lumber Company for Mr. Piwowar to use. After the first four or five nails were inserted, Mr. Piwowar struck the next nail and the head of the nail came off, hitting him in the right eye and causing permanent injury.

Mr. and Mrs. Piwowar filed this suit against Washington Lumber Company (Washington), the retail store which sold the nails, and Wheeling Corrugating Company, a division of Wheeling Steel Corporation, and Wheeling-Pittsburgh Steel Corporation (Wheeling), the manufacturer of the nail. Numerous other defendants were dismissed from the action prior to trial. Plaintiffs' case is based on three theories of liability: negligence, strict liability, and implied warranty. Both defendants filed motions for change of venue from the county. Plaintiffs responded with motions to strike the defendants' requests but failed to seek a hearing on the issue. As a result, no evidence was presented to support the plaintiffs' motion to strike.

The case was venued to Porter Superior Court and tried to a jury on February 15, 1978. The jury returned its verdict against the plaintiffs and in favor of the defendants. Judgment was entered accordingly.

In this appeal the plaintiffs raise the following issues:

(1) Is the rule providing for change of venue from the county without cause constitutional?

(2) Should exhibits be admitted into evidence when they contain notations by a person who did not testify?

(3) Did the trial court abuse its discretion in making certain evidentiary and procedural rulings?

(4) Should the trial court have permitted objections to jury instructions to have been made and taken by the court reporter before cause was submitted to the jury?

(5) Should the court have permitted the jury and bailiff to take exhibits into the jury room for examination?

(6) Did the court err in giving and refusing instructions?

Plaintiffs present a lengthy argument challenging the constitutionality of Ind. Rules of Procedure, Trial Rule 76, which allows an automatic change of venue with no showing of cause. The appellants charge that this rule violates the plaintiffs' right to conduct litigation without unreasonable burdens, the right to free access to the courts and the right to a trial by a jury

of their peers. These rights are founded in the United States Constitution and the Indiana Constitution. The pertinent portion of TR. 76 states:

"(1) In all cases where the venue of a civil action may now be changed from the judge or the county, such change shall be granted upon the filing of an unverified application or motion without specifically stating the ground therefor by a party or his attorney. . . ."

Initially, it should be noted that the appellants have failed to provide any factual evidence to support this allegation. They merely request the court to take judicial notice of such facts as the racial composition of juries in Lake County and the surrounding area, the economic status of various litigants, the underlying reasons for settlement of cases which have been venued from Lake County and so forth. Obviously, these are extremely complex factual issues which require a fair degree of evidentiary support. Notwithstanding the lack thereof, this Court will discuss the issues raised in appellants' brief so that these legal questions may be settled.

Appellants' first two charges, concerning an unreasonable burden and free access to the courts, allege a deprivation of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution. Plaintiffs contend that an unreasonable and unjustified burden is created by the additional cost and inconvenience resulting from a venue change and the consequent delay in litigation when the case is transferred. In the instant case, an economic burden arose from the payment of additional attorney's fees and travel expenses for witnesses, counsel and the plaintiffs. Plaintiffs also argue that application of the rule pressures many parties to settle claims based on the change of venue burdens rather than the merits of the case.

For support, plaintiffs rely primarily on the cases of *Boddie v. Connecticut* (1971) 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 and *Griffin v. Illinois* (1956) 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. Both of these cases involved a denial of individual freedom due to the indigency of the parties. In *Boddie*, the court characterized a sixty dollar filing fee for a divorce action as a denial of due process when required of indigent parties. Important in that case were the facts that 1) a judicial divorce action is the sole means of terminating a marriage and 2) the filing fee requirement completely foreclosed the parties' access to the courts. The *Griffin* case involved a criminal matter in which a convicted indigent defendant was denied appellate review solely because of his inability to pay for it.

■ The present case differs significantly. First, plaintiffs are not denied complete access to the courts when TR. 76 is invoked. They may be encumbered with additional inconvenience and expense but the opportunity to be heard in a court of law is not extinguished. Secondly, *Boddie* and *Griffin* concern questions of individual freedom and liberty. This case asserts an interest in property based on a cause of action arising from a violation of tort law. The due process requirements for the protection of personal liberty do not automatically apply to cases involving property interests. As the United States Supreme Court held in *Arnett v. Kennedy* (1974) 416 U.S. 134, at 155, 94 S.Ct. 1633, at 1644, 40 L.Ed.2d 15:

"The types of 'liberty' and 'property' protected by the Due Process Clause vary widely, and what may be required under that Clause in dealing with one set of interests which it protects may not be required in dealing with another set of interests.

"'The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" [Citation omitted]

■ The interest of the state to be protected by the adoption of this rule must be balanced against the harm to the plaintiffs. Trial Rule 76 is designed to provide a fair and impartial trial to all parties and to prevent protracted litigation. *City of Fort Wayne v. State ex rel. Hoagland* (1976),

Ind.App., 342 N.E.2d 865; *State ex rel. Yockey v. Sup. C. et al.* (1974), 261 Ind. 504, 307 N.E.2d 70; *Gulf Oil Corp. v. McManus* (1977), Ind.App., 363 N.E.2d 223.

These essential elements of our judicial system which underlie TR. 76 are not outweighed by the inconvenience and expense to the plaintiffs which may be caused by a venue change.

Therefore, TR. 76 does not violate the requirements of due process by imposing unreasonable burdens on the plaintiffs or by denying them access to the courts. Our judicial structure may, at times, be complex, burdensome, expensive and subject to occasional abuse; however, the mechanisms of our judicial machinery have been distilled over hundreds of years to insure and protect the rights of our individual citizens. Our courts endeavor to fulfill this obligation impartially and equally for all. Trial Rule 76 is a procedural device which enhances the efficiency of our judicial system.

Plaintiffs next allege that a change of venue without cause violates the right to a trial by a jury of peers in that it permits an intentional systematic exclusion of minority groups. This exclusion is created by the transfer of cases involving minority parties to adjacent counties in which very few minority persons reside. Consequently, the juries in these neighboring counties do not have a substantial representation of minority groups and this, the plaintiffs argue, denies a minority plaintiff the right to a fair jury.

The absence of any factual proof on this issue requires the plaintiffs to urge this Court to take judicial notice of the demographic structure of Lake, Porter, Jasper and Newton Counties. Counsel for the plaintiffs also fails to consider that, although his argument is based on a denial of the rights of minorities, the particular plaintiffs in this case are not members of a minority group. Mr. Piwowar is, in fact, a 60-year-old white male.

The basic premise of appellants' argument is that a change of venue from Lake County forms an intentional system of exclusion. In support, numerous United States Supreme Court cases are reviewed which strike down unfair jury selection systems. *Turner v. Fouche* (1970) 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567; *Smith v. Texas* (1940) 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84; and *Patton v. Mississippi* (1947) 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 among others. Each of these cases dealt with the specific procedure of jury selection. In the present case, attention is focused on a trial rule governing venue changes which may only incidently affect the composition of juries selected to hear a particular case.

The Supreme Court of Indiana has previously recognized that a jury selection process which results in noticeable discrimination against a minority race is a denial of due process and equal protection of the laws. *Dixon v. State* (1946), 224 Ind. 327, 67 N.E.2d 138. The present case does not relate a situation in which a member of a minority group is prohibited from participating on a jury.

The plaintiffs here misunderstand their rights regarding the composition of a jury. The United States Supreme Court explained this right in *Fay v. New York* (1947) 332 U.S. 261, at 284, 67 S.Ct. 1613, at 1626, 91 L.Ed. 2043:

"It is a fundamental in questioning the composition of a jury that a mere showing that a class was not represented in a particular jury is not enough; there must be a clear showing that its absence was caused by discrimination, and in nearly all cases it has been shown to have persisted over many years." [Footnote omitted]

and at 291, 67 S.Ct. at 1629:

"[T]his Court has never undertaken to say that a want of proportionate representation of groups, which is not proved to be deliberate and intentional, is sufficient to violate the Constitution."

Also in *Hoyt v. Florida* (1961) 368 U.S. 57, at 59, 82 S.Ct. 159, at 161, 7 L.Ed.2d 118:

"That right does not entitle one accused of crime to a jury tailored to the circumstances of the particular case, whether

relating to the sex or other condition of the defendant, or to the nature of the charges to be tried. It requires only that the jury be indiscriminately drawn from among those eligible in the community for jury service, untrammeled by any arbitrary and systematic exclusions."

Therefore, the plaintiffs have no constitutional right to a proportionate representation of minority groups on a jury.

■ Furthermore, should a party be dissatisfied with the demographic structure of a county to which his cause has been venued, he may then obtain a change of venue from the county on his own motion. The design of this system functions to insure the rights of all parties and obtain a fair and impartial forum.

Trial Rule 76 is, therefore constitutionally valid.

■ The plaintiffs' second assignment of error contends the court improperly admitted hearsay evidence. The contested exhibits consist of a series of photographs taken through the aid of an electron microscope which are attached to sheets of paper. Identifying notations were made on the paper by a person who was not called as a witness. Plaintiffs contend that these notations which merely identified the view and the power or magnification were hearsay evidence and should have been excluded.

The photographs were offered during the direct examination of John Sheehan, an expert witness called on behalf of the defendant Wheeling Company. His testimony revealed that the notations were made by the technician who operated the electron microscope and were made under Mr. Sheehan's direct supervision and control. The technician had a duty to operate the microscope and record his findings, and he had personal knowledge of the objects photographed and the magnifications used.

This evidence is admissible under the "business records" exception to the hearsay rule. As set forth in *Herman v. State* (1965), 247 Ind. 7, at 20, 210 N.E.2d 249, at 256:

"For documents to be admissible as business records within such exception, certain specific requirements must be met, viz: the entrant must make the entries within a reasonable time after the transaction, in the regular course of his business duty, have personal knowledge of the facts, and the record must be original."

The court properly admitted the photographs and the notations on the attached sheets of paper.

■ The appellants next assign error in five particular evidentiary and procedural rulings. Each of these matters was within the discretion of the court and plaintiffs have wholly failed to prove an abuse of that discretion or show prejudicial error resulting therefrom.

"In all cases appealed to this court there is a presumption that the trial court correctly decided the questions presented. It is incumbent upon the appellants to rebut this presumption in their brief by clearly showing that the trial court committed serious error which denied the relief to which they were entitled under the law." *Kuykendall v. Co. Comm.* (1968), 142 Ind.App. 363, at 364, 234 N.E.2d 860, at 861.

No error has been demonstrated.

■ The fourth allegation of error contends that the trial court should have given counsel the opportunity to make objections to the jury instructions for the record before the case was submitted to the jury. Ind.Rules of Procedure, Trial Rule 51(C) provides, in part:

". . . No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury. The court shall note all instructions given, refused or tendered, and all written objections submitted thereto, shall be filed in open court and become a part of the record.

Objections made orally shall be taken by the reporter and thereby shall become a part of the record. . . ."

In this case, the trial court properly permitted counsel to state objections before the instructions were given. Because the court reporter was unavailable at that time, the objections were not recorded until after the jury retired. Although this is not the preferred procedure, it has not created reversible error. Counsel was given the opportunity to make a timely objection.

■ Appellants next contend that the bailiff should not have been allowed to go into the jury room and converse with the jury in the absence of the parties or counsel. An examination of the record shows the following:

"MR. TANASIJEVICH: Can we exhibit Plaintiff's 1?

"THE COURT: Yes, you may. To save time, I'll have the bailiff go in the jury room during the first break and have the jury examine those exhibits without any discussion in the jury room. At that time, at the first break, I'll see that that's done."

To this statement of the court, the Piwowars made no objection. There is nothing in the record that indicates that the bailiff conversed with the jury. At no time did the Piwowars request a hearing to determine if, in fact, the bailiff disobeyed the orders of the court and had any conversations with the jurors, and, if so, the extent and nature of the conversations. The Piwowars saw fit not to file any affidavits or any other documents, informing the court of their suspicion the bailiff had conversed with the jurors.

In the case of *Lambert v. State* (1974), 159 Ind.App. 303, 306 N.E.2d 115, the bailiff made three brief entrances into the jury room to ask if it needed anything and if everything was all right. The court found no intimidation or threat in this simple inquiry which would constitute reversible error. Similarly, in *Conrad v. Tomlinson* (1972), 258 Ind. 115, 279 N.E.2d 546, the bailiff entered the jury room and remained for several minutes while they searched for a lost verdict form. This was also deemed harmless since the bailiff did not communicate with the jury regarding its deliberations and the bailiff's presence had no effect on its verdict.

Based on this authority, the bailiff's actions in the present case do not create error.

■ The final contention of the appellants challenge the giving or refusal of fourteen various instructions. In his brief, counsel combines these fourteen challenges and makes one general argument in support thereof. This method is insufficient to preserve error for review by this Court. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7) specifically requires that the "argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review."

■ The selection of proper jury instructions is a decision entrusted to the trial court's discretion. *Buttram v. State* (1978), Ind., 382 N.E.2d 166. In determining whether any error resulted from the refusal to give a tendered instruction, this Court must consider: 1) whether the tendered instruction is a correct statement of the law, 2) whether there is evidence in the record to support the giving of the instruction, and 3) whether the substance of the tendered instruction is covered by other instructions which were given. *Stowers v. State* (1977), Ind., 363 N.E.2d 978. When a party has failed to properly argue his case, a reviewing court is not required to search the record for error. *Lutheran Hospital, etc. v. Dept. of P W., etc.* (1979), Ind.App., 397 N.E.2d 638.

The judgment of the trial court is affirmed.

Affirmed.

GARRARD, P. J., and STATON, J., concur.