Lori M. OSMULSKI, Appellant–
Defendant,

v.

Charles BECZE, Individually and as Administrator of the Estate of Martha Becze, Deceased, Appellee–Plaintiff,

and Northern Indiana Public Service Company, Appellee–Defendant.

No. 45A03–9307–CV–224.

Court of Appeals of Indiana,
Third District.

Aug. 10, 1994.

---

Kenneth M. Wilk, Nancy Townsend Beggs, Highland, Paul A. Rake, John McCrum, Hammond, for appellant.

Kenneth J. Allen, Gregory M. Bokota, Allen & Sarkisian, Merrillville, for appellee.

GARRARD, Judge.

Lori M. Osmulski (Osmulski) appeals the judgment entered upon a jury verdict against her as a result of a negligence action brought by Charles Becze (Becze), individually and as the administrator of the estate of Martha Becze.[1]

FACTS

This case arose as a result of an accident occurring on January 12, 1988, in Griffith, Indiana. At approximately 5:15 p.m., a pickup truck driven by Osmulski struck Martha Becze as she was attempting to cross Ridge Road. Martha Becze subsequently died from the injuries she sustained in the accident. In addition, there was evidence that the streetlight at the intersection was not working at the time of the accident.

After a jury trial, a judgment was entered against Osmulski in the amount of $211,200.00.[2] Osmulski's motion to correct errors was denied, and she now appeals. We will discuss additional facts as needed.

ISSUES AND DISCUSSION

Osmulski raises several issues for review, which we address as follows:

I. Whether the trial court erred in denying Osmulski's motion for a change of venue.

II. Whether Osmulski was prejudiced by the admission of allegedly improper expert testimony.

III. Whether the trial court utilized an improper mortality table in its instructions to the jury.

IV. Whether the trial court erred in denying Osmulski's motion for summary judgment.

V. Whether the jury's verdict was excessive.

ISSUE I

■ Osmulski first contends that the trial court erred in denying her motion for a change of venue under Indiana Trial Rule 76 on the basis that the rule as applied to civil cases filed in Lake County violates the Equal Protection Clause of the Fourteenth Amendment. We disagree.[3]

■ Prior to February 1, 1992, T.R. 76 provided one automatic change of venue from a county upon a proper and timely motion. T.R. 76 provided in relevant part:

(1) In all civil actions, except those to enforce a statute defining an infraction, where the venue may now be changed

1. On April 27, 1993, pursuant to a stipulation between Northern Indiana Public Service Company (NIPSCO) and Becze, the trial court set aside the judgment entered against NIPSCO.

2. The jury found the total damages to be $330,000.00 and attributed 5% of the fault to Martha Becze, 64% to Osmulski, and 31% to NIPSCO.

3. Becze argues that Osmulski has waived consideration of this issue by failing to timely file for a change of venue or, alternatively, by failing to timely appeal the trial court's denial of the motion.

Becze initially filed his case in the county division of the Lake Superior Court. Although the provisions of T.R. 76 do not apply in this court, Osmulski timely filed a motion for a change of venue to preserve her rights. After the decision in *Superior Const. Co. v. Carr* (1990), Ind., 564 N.E.2d 281, holding that the county court lacked jurisdiction over claims where the amount in controversy exceeded $10,000.00, the case was transferred to Lake Superior Court. Almost three months later, Osmulski renewed her motion for change of venue, and she argues on appeal that the motion remained pending

upon the transfer of the case. In our review of the record, we see no indication of the refiling of any pleadings in the Lake Superior Court, and therefore find that all pleadings and motions which were initially filed in the county court division remained pending upon transfer.

Becze also argues that Osmulski did not timely appeal the denial of the motion for change of venue. Ind.Appellate Rule 4(B) enumerates the different types of interlocutory orders which are appealable, none of which apply in this case. Moreover, the court's order is not a final judgment under Indiana Trial Rule 54(B), despite the trial court's language that "[t]here is no just reason for delay and the Clerk is ordered to enter final judgment on this issue, *instanter*." (R. 147). To be a final judgment under T.R. 54(B), a judgment must possess the requisite degree of finality and must dispose of at least a single substantive claim. *Legg v. O'Connor* (1990), Ind. App., 557 N.E.2d 675, 676. A motion for a change of venue is not a substantive claim and is therefore not a final judgment. Osmulski has properly preserved her right to appeal the court's ruling.

from the judge or the county, such change shall be granted upon the filing of an unverified application or motion without specifically stating the ground therefor by a party or his attorney.

The mandatory nature of the rule was designed to guarantee a fair and impartial trial, and the failure to grant a timely motion constituted reversible error. *Cooley v. Koetter Woodworking, Inc.* (1993), Ind.App., 607 N.E.2d 975, 977.

Becze objected to Osmulski's motion for change of venue, arguing that T.R. 76 as applied to civil cases filed in Lake County violates the Equal Protection Clause of the Fourteenth Amendment. The trial court agreed, and entered extensive findings of fact and conclusions in support of its decision.

■ More than a century ago, the United States Supreme Court decided that the state denies a defendant equal protection of the law when it places him on trial before a jury from which members of his race have been purposefully excluded. *Strauder v. West Virginia* (1879), 10 Otto 303, 100 U.S. 303, 25 L.Ed. 664. In *Batson v. Kentucky*, the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits the state from exercising its peremptory challenges to exclude members of the defendant's race from the petit jury. *Batson v. Kentucky* (1986) 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. In subsequent rulings, the Court has extended *Batson,* finding it applicable to civil cases and holding that a litigant may raise a *Batson* claim regardless of his race. *See Powers v. Ohio* (1991), 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (a criminal defendant may object to the use of a peremptory challenge to exclude jurors based on their race whether or not the defendant and the excluded jurors share the same race); *Edmonson v. Leesville Concrete Co., Inc.* (1991), 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (the race-based exclusion of jurors by a private litigant in a civil case violates the equal protection rights of the challenged jurors). The decisions in *Powers* and *Edmonson* are rooted in the basic notion, also articulated in *Batson,* that the denial of the opportunity to participate in jury service on account of one's race not only injures a defendant but also unconstitutionally discriminates against the excluded juror. This harm goes beyond the defendant and excluded juror to touch the entire community, as "[s]election procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice." *Batson,* 476 U.S. at 87, 106 S.Ct. at 1718 (citations omitted). *Powers* emphasized the importance of the opportunity for citizens to participate in the administration of justice:

> Jury service preserves the democratic element of the law, as it guards the rights of the parties and insures continued acceptance of the laws by all of the people. . . . It 'affords ordinary citizens a valuable opportunity to participate in a process of government, an experience fostering, one hopes, a respect for law.' . . . Indeed, with the exception of voting, for most citizens the honor and privilege of jury duty is their most significant opportunity to participate in the democratic process.

*Powers,* 499 U.S. at 407, 111 S.Ct. at 1369 (citations omitted).

Osmulski contends that this court has already considered and rejected a constitutional challenge to T.R. 76 in *Piwowar v. Washington Lumber & Coal Co.* (1980), Ind.App., 405 N.E.2d 576. However, *Piwowar* was decided well before *Batson* and its progeny. Therefore we deem it necessary to re-examine the constitutional issues raised in light of new Supreme Court precedent.

■ The trial court made numerous findings of fact, none of which are disputed by Osmulski, in support of its conclusion that T.R. 76 is unconstitutional as applied to civil cases filed in Lake County. The court found that African–Americans comprise approximately twenty-five percent of the general population of Lake County, and that the venire from which Lake County jurors are randomly selected has approximately the same racial composition. Yet in each of the three counties to which a case from Lake County might be venued, African–Americans constitute less than one percent of the gener-

al population.[4] Affidavits from the presiding judges in Porter, Newton and Jasper counties stated that in the last 568 jury trials held in these counties, only two African–Americans have served as jurors.[5] The trial court also found that, if Becze took a change of venue from Porter, Newton or Jasper counties, the racial composition of the general population of those counties to which venue could be perfected is similarly devoid of African–Americans, with the exception of La-Porte County. Finally, the court took judicial notice of the fact that defense firms routinely seek change of venue from Lake County, which was admitted by counsel at the hearing on the change of venue motion. The findings entered by the trial court were adequately supported by the evidence presented, including census data and the affidavits of trial court judges.

In its conclusions, the trial court analogized the automatic change of venue from Lake County to an "exhaustive peremptory challenge," in that it effectively strikes all prospective African–American jurors from the venire without any type of race-neutral explanation. We agree and conclude that *Batson* provides the appropriate analytical framework for determining the constitutionality of T.R. 76, as the end result, the exclusion of African–Americans from jury service, is the same whether a peremptory challenge or an automatic change of venue, as utilized in this case, is the tool employed.

■ Initially, we must determine whether the exercise of the automatic change of venue constitutes state action and whether Becze had standing to assert the equal protection rights of the excluded jurors. We find the reasoning set forth in *Edmonson*, which held that a civil litigant exercising a peremptory challenge was acting pursuant to a course of state action, to be applicable. Under the state action analysis, we first ask whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority. *Edmonson*, 500 U.S. at 618–22, 111 S.Ct. at 2082–83. Next, we must determine whether the private party charged with the deprivation could be described in all fairness as a state actor. *Id.* at 620, 111 S.Ct. at 2083. Clearly, Osmulski, in filing her motion for change of venue, was exercising a privilege having its source in state authority: the Indiana Rules of Trial Procedure. In analyzing the second part of the inquiry, it is relevant to examine the extent to which the actor relies on government assistance and benefits. *Id.* Clearly, without the "overt, significant participation of the government," the court system and procedural rules utilized by Osmulski would not exist. *See Id.* 500 U.S. at 622, 111 S.Ct. at 2084. We find that Osmulski's motion for an automatic change of venue was pursuant to a course of state action and therefore subject to the dictates of the Constitution.

■ Further, under *Powers*, we conclude that Becze had standing to assert the equal protection rights of the excluded jurors. A

4. Based on 1990 United States census data provided to the Northwestern Indiana Regional Planning Commission, African–Americans make up less than four-tenths of one percent of the general population in Porter County, less than one-tenth of one percent in Newton County, and less than four-tenths of one percent in Jasper County. (R. 145).

5. In Porter County, the affidavits of Judge Raymond Kickbush, Judge Roger Bradford and Judge Thomas Webber (serving since 1977, 1981 and 1989, respectively) stated that no African–Americans had served as jurors in the 350 trials which the three judges had collectively presided over. In Newton County, the affidavits of Judge Daniel Molter and Judge George Vann (serving since 1986 and 1987, respectively) stated that no African–Americans had served as jurors in the 83 trials which the two judges had collectively presided over. Finally, the affidavit of Jasper County Superior Court Judge J. Philip McGraw stated that, during the 160 trials he had presided over since becoming judge in 1976, two African–Americans had served as jurors. The court also found, assuming that the affidavits referred only to six member juries, that of the last 3,408 jurors serving in jury trials in Porter, Newton and Jasper Counties, only two have been African–Americans. We note that Becze failed to present any affidavits from two judges in Jasper County and two judges in Porter County. However, Osmulski has not argued that the composition of the juries in these courts would be any different and, given the percentage of African–Americans in the general populations of these counties, we find it reasonable to infer that the composition of juries in these courts would not substantially differ from that of those courts from which affidavits were procured.

litigant may raise a claim on behalf of a third party if the litigant can demonstrate that he has suffered a concrete, redressable injury, that he has a close relation with the third party, and that there exists some hindrance to the third party's ability to protect his own interests. *Powers*, 499 U.S. at 411, 111 S.Ct. at 1370–71. The doubt which racial discrimination in the selection of jurors casts on the judicial system and on verdicts rendered by that system provides the necessary injury to a civil litigant to satisfy the first prong of this analysis. Additionally, both the excluded juror and a litigant have a common interest in eliminating discrimination from the judicial system, creating a relationship which permits the petitioner to be an effective advocate for the rights of the excluded juror. Finally, in *Edmonson*, the Supreme Court concluded that, while a juror did have the right to bring suit on his behalf, he would encounter significant barriers in the pursuit of that right. *See Id.* at 414, 111 S.Ct. at 1371–73; *Edmonson*, 500 U.S. at 627–31, 111 S.Ct. at 2087–88. We find that Becze has satisfied the standard necessary to establish third-party standing.

■ Having determined that Osmulski filed her motion for change of venue pursuant to a course of state action and that Becze had standing to raise the equal protection rights of the excluded jurors, we now apply the dictates of *Batson* to the case at hand. After a litigant has established a prima facie case of discrimination against excluded jurors, the burden shifts to the opposing party to come forward with a race-neutral explanation for the exclusion. *Batson*, 476 U.S. at 97, 106 S.Ct at 1723. To establish a prima facie case of discrimination, the litigant is entitled to rely on the fact that the mere exercise of a peremptory challenge (or, under these facts, an automatic change of venue) may be circumstantial evidence of discriminatory intent, as it constitutes a practice that permits "those to discriminate who are of a mind to discriminate." *Id.* at 96, 106 S.Ct. at 1723; *Dunham v. Frank's Nursery & Crafts, Inc.* (1990), 7th Cir., 919 F.2d 1281, 1283, *cert. denied*, 501 U.S. 1205, 111 S.Ct. 2797, 115 L.Ed.2d 970. The litigant must then show that these facts and any other relevant circumstances raise an inference that the proponent used the practice at issue to exclude individuals from serving on a jury due to their race. *Batson*, 476 U.S. at 96; 106 S.Ct. at 1723. The Supreme Court has noted that a pattern of strikes against African–American jurors included in a particular venire may give rise to an inference of discrimination. *Id.* at 97, 106 S.Ct. at 1723.

We agree with the trial court's conclusion that Becze established a prima facie case of the discrimination in the use of T.R. 76 by Osmulski. Osmulski utilized the automatic change of venue in such a manner that it resulted in changing the jury pool from one with twenty-five percent African–Americans to one with less than one percent African–Americans, effectively operating as strikes against every potential African–American juror in Lake County. This court has previously found that the attempted striking of the only two prospective African–American jurors on a venire may be sufficient to initially raise an inference of racial discrimination. *Evans v. State* (1991), Ind.App., 566 N.E.2d 1037, 1040. Moreover, the trial court also found that there has been a systemic pattern of the removal of civil cases filed in Lake County, resulting in African–Americans being excluded from serving as jurors in civil cases filed in Lake County. These factual findings, unchallenged by Osmulski, constitute a prima facie case of discrimination.

■ Thus, the burden shifts to Osmulski to articulate a race-neutral explanation for the motion for an automatic change of venue. In *Batson*, the Supreme Court noted that a neutral explanation "need not rise to the level justifying exercise of a challenge for cause." *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. Given the underlying purpose of T.R. 76—to provide a fair and impartial trial to all parties—we conclude that a race-neutral explanation may be established through a showing of good cause for a change of venue, as found in the current version of T.R. 76(A).[6] A proponent may not simply deny that he had a discriminatory motive, but

6. T.R. 76 currently provides that a change of venue shall be granted "only upon a showing that the county where suit is pending is a party or that the party seeking the change will be unlikely to receive a fair trial on account of local

must articulate a neutral explanation related to the particular case to be tried. *Id.* 476 U.S. at 98, 106 S.Ct. at 1724.

 We disagree with the trial court's conclusion that there can never exist a race-neutral justification for the use of the automatic change of venue provision in Lake County.[7] However, the court correctly found that Osmulski's mere denial of discriminatory intent was insufficient to rebut Becze's prima facie case. As Osmulski has failed to provide us with any type of race-neutral explanation for her motion for a change of venue, and she has not disagreed with the trial court's finding that her only proffered explanation was a denial of discriminatory intent, we conclude that Osmulski's motion for change of venue in this case violated the Equal Protection Clause of the Fourteenth Amendment and was properly denied.

## ISSUE II

 Osmulski next contends that the admission of expert testimony from police officer Michael Gulley (Gulley) and Becze's expert Robert Lippman (Lippman) was improper.[8]

Osmulski on appeal does not challenge the qualification of either individual as an expert witness, but rather argues that the trial court erroneously permitted the witnesses to state their opinions as to issues of fault, duty and reasonable care. She argues this should have been left for determination by the jury. The trial court has broad discretion in determining the admissibility of opinion evidence, and the court's decision will be reversed only for an abuse of that discretion. *Cox v. American Aggregates Corp.* (1991), Ind.App., 580 N.E.2d 679, 686, *trans. denied.*

In her brief, Osmulski offers the following description of the allegedly objectionable testimony of Gulley and Lippman:

> The testimony of Officer Gulley and Robert Lippman was replete with objectionable opinions as to what a reasonable or "prudent" person should do, whose fault the accident was, and what was foreseeable by the various parties. Likewise, "experts" Gulley and Lippman repeatedly testified as to matters of law regarding the definition of a crosswalk, the duty to yield, the foreseeability of the accident and the respective reasonableness of the parties' conduct.

(Brief of Appellant at 13).

Osmulski fails to set forth in her brief the specific testimony which she deems prejudi-

---

prejudice or bias regarding a party or the claim or defense presented by a party."

7. The trial court concluded that, since under *Batson* the exclusion of a juror must be based upon a nonracial characteristic of the particular juror sought to be excluded, it would be impossible to ever make a similar showing in the context of the automatic change of venue in Lake County, where essentially all African–Americans are excluded. However, we recognize that there are a variety of factors present in any given case which a litigant may believe will impede his opportunity for a fair and impartial trial in a particular county, just as there are a multitude of reasons that a litigant may conclude a particular juror will not be able to fairly render a verdict. A litigant is entitled to a jury which has not been tainted by racial discrimination, but he is not entitled to a proportional representation of minority groups on that jury. *Williams v. City of Indianapolis* (1991), Ind.App., 567 N.E.2d 1197, 1200, *reh'g denied, trans. denied.*

8. Osmulski also claims error in the denial of her motion to exclude the testimony of Lippman and request for a continuance of trial due to the failure of Becze to list Lippman as an expert witness on either his witness list or the pre-trial order, although we note that her motion to ex-

clude relied exclusively on challenges to Lippman's qualifications as an expert and that these qualifications are not disputed on appeal. (R. 280–281).

The grant or denial of a motion for a continuance rests in the sound discretion of the trial court and will be reversed only for an abuse of that discretion. *Hudgins v. McAtee* (1992), Ind. App., 596 N.E.2d 286, 289. Becze replaced an expert listed on the pre-trial order with Lippman, having reserved the right to amend his list of witnesses. At a hearing held on March 16, 1993, regarding Osmulski's motion to exclude the testimony of an expert witness for NIPSCO, it was revealed that the parties had agreed at a previous deposition to allow Becze to change his expert witness. While Osmulski now claims that she was not a party to this agreement, the record reflects that an associate of Osmulski's attorney was present at the deposition and voiced no objection. (Supp.R. 9). Further, Osmulski was on notice that Becze would have an expert at least as of the pre-trial order, and she was permitted to depose Lippman shortly before trial. We cannot say that Osmulski was substantially prejudiced, and therefore find no abuse of discretion in the judge's decision to permit Lippman to testify.

cial, any objections made thereto, or any rulings of the court. Nor has she made any citation to the record as to where such information is located.[9] Osmulski has the duty to affirmatively present a case of error for this court. We are not authorized to search the record in order to discover what testimony could possibly serve as grounds for reversal. Osmulski's argument fails to fulfill her duty under the Rules of Appellate Procedure, and we must treat this issue as waived. Ind.Appellate Rule 8.3(A)(7); *Kroger Co. Sav–On Store v. Presnell* (1987), Ind.App., 515 N.E.2d 538, 542–43, *reh'g denied, trans. denied.*

■ Furthermore, even if we were to consider Osmulski's argument on the merits, we would find no reversible error. With regard to the testimony of Officer Gulley, it was Osmulski who qualified him as an expert witness. Osmulski then proceeded to elicit the following testimony:

Q: Well, you investigated the accident?

A: Yes, Sir.

Q: All right. Did you make a determination that fault was with the decedent?

. . . .

Q: In the upper left-hand side of your report, did you make a determination by code as to the fault for this accident?

A: It's contributing circumstances is what that section is for.

Q: For whom were the contributing circumstances?

A: Number 17. I am without a cross reference. I couldn't tell you what that means today. They are listed nearly 50 of them, and I don't have them all memorized.

Q: Okay. Did you ascertain whose fault, in your opinion, the accident was?

A: There—there was no fault on the driver of the accident.

(R. 476–477).

On redirect examination, Becze had Gulley review certain statutes regarding pedestrian crosswalks to refresh his recollection, and then asked if this information changed his opinion. Based upon this review, Gulley stated that a crosswalk did exist at the intersection where the accident occurred and that this information would cause him to change the opinion expressed in his accident report. Clearly, Osmulski initially injected Gulley's opinion on who was at fault for the accident. A party cannot complain of an error it has invited. *Indiana Dept. of Ins. v. Zenith Re-Insurance Co.* (1992), Ind., 596 N.E.2d 228, 230, *reh'g denied.*

■ We also find no reversible error in the testimony of Lippman. Although the Indiana Rules of Evidence now establish the requirements for the admission of expert testimony,[10] the state of the law at the time of this trial was arguably unsettled. Under the traditional approach, to be admissible the subject matter of an expert's testimony had to be related to some scientific field beyond the knowledge of the average lay person and the witness had to be shown to have sufficient skill in that area so that his opinion would probably aid the trier of fact in its search for the truth. *Grimes v. State* (1983), Ind., 450 N.E.2d 512, 520. However, the court in *Summers v. State* (1986), Ind.App., 495 N.E.2d 799, *reh'g denied, trans. denied,* noting the trend away from strict application of the rule excluding expert testimony on subjects within the common knowledge of jurors, decided that the more appropriate test is that the expert testimony must assist the trier of fact in understanding the evidence or deciding a factual issue, and the witness must be qualified by knowledge, skill,

---

9. In her reply brief, Osmulski does provide references to the record for the specific testimony of Gulley and Lippman which she claims to be objectionable. However, we have repeatedly held that new arguments made in a reply brief are inappropriate and will not be considered on appeal. *Brane v. Roth* (1992), Ind.App., 590 N.E.2d 587, 591, *reh'g denied, trans. denied.*

10. Ind.Evidence Rule 702 states the standard for the admission of expert testimony:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Evid.R. 702(a).

experience, training, or education to give such testimony. *Id.* at 803. While our supreme court has appeared to both accept and reject the *Summers* test,[11] we conclude that the best approach is the modern one, which is also reflected in our new rules of evidence: expert testimony is admissible when the expert has some special knowledge which would assist the trier of fact in understanding the evidence or deciding a factual issue. *Cox,* 580 N.E.2d at 686.

■■■ At the beginning of his testimony, Lippman stated his opinion that this accident was caused by Osmulski's failure to yield the right of way to Martha Becze, who was crossing in an unmarked crosswalk. However, although on appeal Osmulski maintains that this testimony was improperly admitted, she did not timely object to Lippman's testimony. (R. 557). Further, while on appeal Osmulski makes much of the testimony of both Gulley and Lippman that an unmarked crosswalk existed at the intersection, Osmulski's own expert testified on cross-examination that a crosswalk did exist, without objection. Thus, any testimony regarding these issues was harmless because the same or similar evidence was admitted without objection. *Id.*

■■■ In addition, Osmulski argues that Lippman's testimony that she did not use reasonable care was clearly inadmissible because it goes to an issue which should be decided by the jury. However, we have previously held that opinion testimony by an expert witness even as to the ultimate fact in issue is not objectionable merely for the reason that it invades the province of the trier of fact. *Public Service Indiana, Inc. v. Nichols* (1986), Ind.App., 494 N.E.2d 349, 358, *reh'g denied* (expert permitted to testify as to whether electric company used reasonable care in supplying electrical service facilities); *see also* Evid.R. 704(a) ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact.")

In *Estate of Hunt v. Board of Com'rs of Henry County* (1988), Ind.App., 526 N.E.2d

1230, *reh'g denied, trans. denied,* the court concluded, under *Summers,* that there was no abuse of discretion in permitting a police officer to testify as to his opinion of the contributing causes of a car accident. In the case at bar, we find no abuse of discretion in the trial judge's conclusion that Lippman had knowledge and experience which would be helpful to the jury in understanding the evidence surrounding the accident.

ISSUE III

Osmulski further argues that the trial court erred in using the mortality tables issued by the United States Government Department of Health and Human Services (U.S. Life Tables) rather than those appearing in Burns Indiana Statutes in its instructions to the jury.

■■■ We again note the failure of counsel for Osmulski to abide by the appellate procedural rules. App.R. 8.3(A)(7) states that "[w]hen error is predicated on the giving or refusing of any instruction, the instruction shall be set out verbatim in the argument section of the brief with the verbatim objections, if any, made thereto." In her brief, Osmulski has not even provided us with a citation to the record indicating where the instruction to which she is objecting is located, instead choosing to paraphrase what the court "essentially instructed the jury." Notwithstanding the resulting waiver of this issue, we find the argument to be without merit.

■■■ The trial court instructed the jury as to the life expectancies of Becze and his deceased wife according to the U.S. Life Tables and then stated that "[t]his table may be considered by you in arriving at the amount of damages to be awarded...." (R. 336). It can hardly be argued that this instruction stated as an undisputed fact the life expectancies of Becze and his deceased wife. Rather, it simply provided that the information contained in the U.S. Life Tables could be considered by the jury in any award of damages. Further, while Osmulski argues she was prejudiced because there was evidence that the decedent had significant

---

11. *See Farrell v. State* (1993), Ind.App., 612 N.E.2d 124 (commenting on the unsettled law in the area of admission of expert testimony), *vacated,* (1993), Ind., 622 N.E.2d 488.

health problems that could have affected her life expectancy, the trial court instructed the jury that, in determining damages, they could consider "the age of the deceased, her health and her normal life expectancy...." (R. 334). It is elementary that when reviewing instructions, this court construes them as a whole and with reference to one another. *Chaiken v. Eldon Emmor & Co.* (1992), Ind. App., 597 N.E.2d 337, 345. Finally, though Osmulski alleges that there was no evidence that the U.S. Life Tables are in fact "standard", she does not indicate how they are invalid. We find no error.

## ISSUE IV

Osmulski next argues that the trial court erred in denying her motion for summary judgment. We find no error in the court's ruling.

■ In reviewing the entry or denial of a motion for summary judgment, we apply the same standard as does the trial court. *Collins v. Covenant Mut. Ins. Co.* (1992), Ind. App., 604 N.E.2d 1190, 1194. Summary judgment shall be granted if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind.Trial Rule 56(C). Only after the moving party satisfies this standard does the burden shift to the opponent to show specific facts which it contends precluded the entry of summary judgment. *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369, 1371. A negligence action is rarely appropriate for summary judgment. *Lucas v. Dorsey Corp.* (1993), Ind.App., 609 N.E.2d 1191, 1198, *trans. denied.*

■ Here, Becze relied upon the deposition testimony of Osmulski in his response to Osmulski's motion for summary judgment:

A. I went through the intersection, and this—I didn't see anything. This woman was right there. Well, I didn't even know it was a woman. It—just hit my car hit—I hit somebody. I didn't know what it was. I stopped my car—or the truck, and then I saw what happened. And I guess somebody called the police and—

Q. All right. So you didn't see whomever or whatever you hit prior to hitting it; is that correct?

A. Correct.

(R. 172).

Clearly, a potentially reasonable inference from this testimony is that Osmulski failed to maintain a proper lookout. Summary judgment is not appropriate where conflicting inferences arise from the evidence before the court. *Richter v. Klink Trucking, Inc.* (1992), Ind.App., 599 N.E.2d 223, 225, *reh'g denied, trans. denied.* Here, the testimony of Osmulski gave rise to conflicting inferences as to whether she violated the duty to maintain a proper lookout, and the issue was properly submitted to the jury.

## ISSUE V

■ Finally, Osmulski maintains that the jury's verdict was excessive.

An award of damages will be reversed as excessive only when it is apparent from a review of the evidence that the amount was so great that it cannot be explained upon any basis other than prejudice, passion, partiality, corruption or some other improper element. *Wal–Mart Stores, Inc. v. Blaylock* (1992), Ind.App., 591 N.E.2d 624, 628, *trans. denied.* We will not reweigh the evidence but will consider only the evidence and reasonable inferences supporting the verdict. *Id.; Lazarus Dept. Store v. Sutherlin* (1989), Ind.App., 544 N.E.2d 513, 526, *reh'g denied, trans. denied.*

The jury awarded Becze damages in the amount of $330,000. At the time of trial, Becze had survived his wife by five years, and he had a life expectancy of almost six more years. In addition to economic damages in the form of hospital, burial and funeral expenses, there was substantial evidence as to the value of Martha Becze's services, care and affection. Becze had been confined to a wheelchair as a double amputee since 1985, and his wife performed all of the household duties in addition to caring for her husband. Several witnesses also testified regarding the trauma and hardship suffered by Becze as a result of his wife's death. The jury's award was within the scope of the evidence presented at trial.

For the foregoing reasons, the judgment of the trial court is affirmed.

BARTEAU, J. concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent to the Majority's disposition of Issue I. The Majority impermissibly extends the rationale of the *Batson* line of cases to impose barriers to the use of pretrial devices provided in the Indiana Rules of Trial Procedure. In so doing, the Majority unduly encumbers the administration of justice in Indiana courts.

It is well settled that the Equal Protection Clause prohibits the use of peremptory challenges to exclude prospective jurors on account of their race. *Edmonson v. Leesville Concrete Co., Inc.* (1991), 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660; *Powers v. Ohio* (1991), 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411; *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. The Supreme Court recently extended this principle to preclude the use of gender-based peremptory strikes. *J.E.B. v. Alabama ex rel. T.B.* (1994), — U.S. —, 114 S.Ct. 1419, 128 L.E.2d 89.

The Majority avails itself of this principle and then makes the significant leap from jury selection to the automatic change of venue provisions of Ind.Trial Rule 76. The Majority supports this leap by characterizing the use of change of venue in Lake County as an "exhaustive peremptory challenge" of prospective jurors on account of their race. This characterization is unwarranted and improper.

Prior to the amendment of T.R. 76, the right to automatic change of venue was conferred equally on every litigant in Indiana courts. The constitutionality of this rule was upheld in *Piwowar v. Washington Lumber and Coal Co.* (1980), Ind.App., 405 N.E.2d 576. The Majority's conclusion divests litigants in counties with substantial minority populations of this right. While it is true that Lake County has a substantially greater population of African–Americans than its surrounding counties, it does not logically follow that a civil litigant in Lake County who chooses to exercise his right to automatic change of venue is doing so in order to purposefully exclude African–Americans from serving on the jury. In practice, parties request a change of venue for any number of reasons. Nevertheless, a party wishing to exercise his right now bears the burden of disproving discriminatory intent.

Inherent in the Majority's analysis is the assumption that racial proportionality on juries will be better achieved by limiting the availability of T.R. 76 in certain counties. This assumption ignores the fact that racially proportionate juries are not constitutionally required. *Piwowar, supra,* at 580–581 (quoting *Fay v. New York* (1947), 332 U.S. 261, 291, 67 S.Ct. 1613, 1629, 91 L.Ed. 2043; *Hoyt v. Florida* (1961), 368 U.S. 57, 59, 82 S.Ct. 159, 161, 7 L.Ed.2d 118).

At the same time, the Majority fails to acknowledge that disproportionate distribution of racial and ethnic populations in a given area is common: one county may be home to a substantial number of citizens from a particular ethnic group, another may be home to a substantial number of citizens from a particular religious group. This makes necessary the determination of when a group's population percentage constitutes a "substantial number" invoking this rule. Trial courts would be required to consider these factors every time a litigant attempted to exercise his rights under T.R. 76. In turn, the trial court's decision would be appealable, and if determined to be erroneous would result in relitigating a case nearly from its point of inception. This potential for relitigation places an additional hardship on our already overburdened courts.

The Majority's analysis interjects racial matters into yet another portion of the judicial process, further promoting polarization of racial causes and detracting from the concept of equality among all who avail themselves of our courts. The former T.R. 76 was facially neutral (as is the current rule), affording each litigant an equal opportunity to obtain a change of venue. *See Piwowar, supra,* at 581. These litigants should not

lose their otherwise equal footing based solely upon accidents of geography.

For the reasons stated above, I respectfully dissent to the disposition of Count I, and would remand this cause for a new trial.