**Anthony TROJNAR, Appellant–Respondent,**

v.

**Carole TROJNAR, Appellee–Petitioner.**

No. 45A03–9609–CV–333.

Court of Appeals of Indiana.

March 12, 1997.

Rehearing Denied May 9, 1997.

Stephen Bower, Cohen & Thiros, Merrillville, for Appellant–Respondent.

Nels Kompier, Smith & Kompier, Hammond, for Appellee–Petitioner.

## OPINION

HOFFMAN, Judge.

Appellant-respondent Anthony Trojnar appeals the trial court's ruling that he failed to timely strike a panel member thereby forfeiting his right to a change of judge and the court's rulings denying his requests for a continuance of the proceedings on contempt for failure to pay child support. The facts relevant to the appeal are recited below.

In August 1989, the parties' marriage was dissolved. In August 1992, an order was entered increasing Anthony's child support obligation. In January 1994, Anthony filed motions for a change of judge and for modification of support. The trial court denied the motion for a change of judge and then denied the motion for modification. Anthony appealed.

On October 10, 1995, this Court issued a decision reversing the trial court's denial of the motion for a change of judge and finding the trial court was without jurisdiction to act on the motion for modification. *Trojnar v. Trojnar*, 656 N.E.2d 287, 290 (Ind.Ct.App. 1995). The Chronological Case Summary (CCS) noted that the certified opinion from the supreme court was received on the same date, although other entries on separate pages of the CCS suggest receipt of the certified opinion on other dates.[1]

In an order dated December 4, 1995, the special judge named a panel. The order naming the panel was received in the office of counsel for Anthony on December 19, 1995. On December 20, 1995, counsel prepared a document striking one member of the panel and mailed the document to the Clerk of the Lake County Courts. The document was received by the court on December 21, 1995.

Carole then filed her motion to strike Anthony's motion striking a panel member be-

1. Entries dated "10–10–95" through "3–6–96" (with the month for a later entry obliterated by the hole punch to create the record) appear on the CCS page marked as number 4. The following two pages purport to cover the time periods between "11–28–95" through "2–28–96" and "2– 1–96" through "3–6–96." The CCS entries then begin on "3–11–96." The pages after page 4, and several pages prior to page 4, are not marked with page numbers. [R. 7–19] Overlapping and conflicting entries have been made.

cause she alleged the striking was untimely, pursuant to Ind. Trial Rule 79(F). Anthony responded noting that he could not comply with the 14–day deadline for striking as provided in T.R. 79(F) because notice of the order naming the panel was not mailed until the fourteenth day after the order. The special judge found that Anthony failed to strike in a timely manner and resumed jurisdiction as provided in T.R. 79. Anthony then requested reconsideration and filed for a motion for relief from the order pursuant to *inter alia* Ind. Trial Rule 72. The request was denied. Anthony filed a praecipe.

Anthony filed a request for certification allowing an interlocutory appeal of the ruling regarding the change of judge. Anthony also moved for a continuance of the request for a contempt citation filed by Carole. In March 1996, the special judge granted the motion for continuance and granted the certification upon Anthony's posting of a cash bond in the amount of $7,000. The record does not disclose payment of the bond.

On June 24, 1996, the court entered an order setting the contempt hearing for July 3, 1996 with the notation that the date had been coordinated with all parties. On June 28, 1996, premised upon Anthony's herniated disc requiring back surgery on July 16, 1996, counsel for Anthony filed a motion requesting a continuance. The motion was denied and the hearing date was reaffirmed.

At the July 3, 1996 hearing, Anthony's counsel, without Anthony's presence, again requested a continuance. Counsel noted that Anthony underwent back surgery on July 2, 1996. The continuance was denied. After a hearing, the special judge found *inter alia* that Anthony was in arrears in the approximate amount of $26,800; that Anthony should be incarcerated in the Lake County Jail for a period of 60 days; and that Anthony should be responsible for Carole's attorney's fees. This appeal ensued.

As restated, Anthony presents two issues for review:

(1) whether the special judge erred in determining that Anthony did not timely strike from the change of judge panel named, and by not granting relief based upon the date of notice of the order; and

(2) whether the trial court abused its discretion in failing to grant Anthony a continuance when he was hospitalized at the time of the July 3, 1996 hearing.

■ Initially, Anthony contends that the special judge erred in finding that he failed to timely strike a panel member from those named. The parties do not address the timeliness of the appeal regarding the change of judge. Ind. Trial Rule 75(E) and Ind. Appellate Rule 4(B) specifically require an interlocutory appeal of an adverse decision regarding preferred venue under T.R. 75. *See Bowyer v. Vollmar*, 505 N.E.2d 162, 165–167 (Ind.Ct.App.1987) (issue of preferred venue waived by failure to take timely interlocutory appeal); *but cf. Osmulski v. Becze*, 638 N.E.2d 828, 831 n. 3 (Ind.Ct.App.1994) (because T.R. 76 not specified in App.R. 4(B) as mandatory, and not judgment on merits, does not require immediate interlocutory appeal).[2] In *Hollingsworth v. Key Benefit Adm'rs, Inc.*, 658 N.E.2d 653, 655 (Ind.Ct.App.1995), this Court addressed the proper standard for reviewing decisions regarding transfer of venue pursuant to T.R. 75. In so doing, the immediate nature of the appellate process was noted:

> As such, the trial court's grant or denial of the motion is an interlocutory order because it is one 'made in the progress of the cause, requiring something to be done or observed, but, not determining the controversy.' [Citation omitted].

*Id.* Implicitly, the decision recognized the inherent infirmity in allowing a matter to proceed on the merits only to be held for naught months or years after the ruling on venue. Such is the case in a T.R. 76 context.

■ At the time of an adverse ruling under T.R. 76, the parties must perfect an appeal. Myriad reasons, including judicial economy and fairness to the parties, dictate that parties may not save an issue which would render all subsequent action moot, al-

---

2. The *Osmulski* court found in dicta within a footnote that the absence of a reference to T.R. 76 within App. R. 4(B) operated to allow an appeal after the conclusion of the case on the merits. In *Osmulski*, resolution of the T.R. 76 issue did not alter the result.

lowing litigation on the merits of a claim to the point of an adverse ruling and then appeal matters outside of the merits. To hold otherwise would be to condone a collateral attack on the judgment.[3] Accordingly, Anthony's failure to perfect the appeal regarding the change of judge constitutes waiver.

Next, Anthony contends that the trial court erred in failing to grant his requests for a continuance based upon his herniated disc and hospitalization. The decision whether to grant or deny a continuance lies within the sound discretion of the trial court and will not be reversed unless the court abused that discretion. *Royalty Vans v. Hill Bros. Plumbing*, 605 N.E.2d 1217, 1220 (Ind. Ct.App.1993). An abuse of discretion occurs when the court reaches a conclusion which is clearly against the logic and effect of the facts and the reasonable and probable deductions to be drawn therefrom. *Id.*

The facts here disclose that Anthony had been granted a continuance of the cause; that the continuance date of July 3, 1996 was pre-arranged; that Anthony then requested a continuance based upon his assertion that he would need back surgery in mid-July; and that on July 3, 1996, counsel appeared asserting on Anthony's behalf that Anthony underwent emergency back surgery on July 2, 1996. Anthony's verified motions for continuance were not verified by Anthony. It is also noteworthy that Anthony had failed to provide ordered discovery regarding his income and assets and that he was found to be more than $26,000 in arrears in child support. The trial court's decision is not clearly against the logic and effect of the facts and inferences to be drawn therefrom. No abuse of discretion occurred by the failure to grant Anthony a continuance.

There being no finding of reversible error, the judgment of the trial court is affirmed.

Affirmed.

RUCKER, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I dissent from the Majority Opinion for the following reasons:

1. A new rule has been promulgated by the Majority. It assumes that Trial Rule 76 rulings should be treated the same as Trial Rule 75 rulings. The latter is a mandatory appeal pursuant to Appellate Rule 4(B)(5) while the former is not. The Majority concludes: "At the time of an adverse ruling under T.R. 76, the parties must perfect an appeal." Op. at 1096. The reason for filing an appeal after a T.R. 75 ruling is the mandate of the Rule itself, T.R. 75(E). Under T.R. 76, an adverse ruling on a change of judge motion should be challenged by a petition for a writ of mandate to the Indiana Supreme Court. If the trial court treats the motion for change of judge as a 4(B)(6) interlocutory motion, and by its ruling makes certification impossible by requiring a cash bond of seven

---

**3.** The dissent's myopic view of the law would lead to an absurd result. Allowing appeal of a change of judge ruling after the merits of the cause would allow an aggrieved party to wait through protracted proceedings including discovery, preliminary hearings, and trial to nullify all action after the ruling. Reversal of a cause after the decision on the merits based upon a procedural matter is tantamount to "two bites at the apple." A party displeased with the judgment on the merits could have a second chance by saving an appeal ostensibly based upon the adverse change of judge ruling, but in reality wiping the slate clean on the merits as well.

Such is the case here. Anthony's appeal on the merits would not yield reversal; however, he could wipe the slate clean, and further stall his child support responsibilities by attacking the change of judge ruling after intervening proceedings including some from which he benefitted.

Far from creating new law as asserted by the dissent, our construction of the trial and appellate rules is mandated by our basic tenets of law and judicial disdain for waste. The dissent does not question the basis for the rule in T.R. 75 matters, and does not offer explanation as to how the same type of ruling in T.R. 76 proceedings should render a different result. Clearly, the explicit rule regarding interlocutory appeal of an adverse T.R. 75 ruling applies with equal force to T.R. 76 matters. Suffice it to say, the mandatory interlocutory appeal evolved to prevent parties from trumping judgments on the merits in the manner attempted here, and "two bites at the apple" has never been the law.

thousand dollars ($7,000.00), a direct appeal on the adverse ruling should be permitted. *Trojnar v. Trojnar,* 656 N.E.2d 287 (Ind.Ct.App.1995); *Cooley v. Koetter Woodworking, Inc.,* 607 N.E.2d 975 (Ind.App.1993); *Marianos v. Marianos,* 431 N.E.2d 530 (Ind.App. 1982). Otherwise, equal protection is denied and the rules create a miscarriage of justice.

2. Conditional certification here amounts to a denial rather than a genuine certification under the law. The order of the trial court states: "... that upon the posting of cash bond in the amount of $7,000 for child support, Certification Order shall issue." [4] Here the trial court has treated the change of judge motion granted conditionally under 4(B)(6).

3. The trial court is without authority to issue a conditional appealable interlocutory order. "No appeal bond shall be necessary to perfect an appeal from any judgment or appealable interlocutory order." T.R. 62(D); App. R. 6(B); *Agmax, Inc. v. Countrymark Cooperative, Inc.,* 661 N.E.2d 1259 (Ind.Ct. App.1996). An appeal bond may only be imposed in order to stay enforcement of a judgment or order during an appeal. *Id.*

4. To the extent that the Majority Opinion implies that Anthony waived the right to appeal the second denial of his motion for change of judge due to the lapse of time, the implication is erronous, since the ruling was never properly certified. For the first denial of Anthony's change of judge see *Trojnar v. Trojnar,* 656 N.E.2d 287 (Ind.Ct. App.1995).

For the above reasons, I conclude that the Majority Opinion has attempted to promulgate a new Appellate Rule—a responsibility reserved to the Indiana Supreme Court under the Indiana Constitution. *Uzelac v. Lake Criminal Court,* 247 Ind. 87, 212 N.E.2d 21

(1965). Additionally, the Indiana Legislature has recognized the Indiana Supreme Court as the only authority which can adopt, amend or rescind rules of court affecting matters of procedure. IND.CODE § 34–5–1–1 (1993). I further conclude Anthony was entitled to a change of judge.

Before turning to the merits of Anthony's claim, it is necessary to address the relevant facts in further detail. Over three years ago, Anthony filed a petition to modify a support order and a motion for change of judge. The trial court, *inter alia,* denied Anthony's motion for change of judge. Anthony successfully appealed this ruling, and on October 10, 1995, this court reversed the trial court with instructions to grant Anthony's motion for change of judge. *Trojnar, supra,* at 290.

Upon remand, the trial court issued an order for change of judge, naming three judges from which the parties would alternately strike in accordance with T.R. 76(D). The order was filed on December 4, 1995. However, the Chronological Case Summary (CCS) shows that copies of this order were not mailed until December 18, 1995. Upon receiving the order on December 19, 1995, Anthony's counsel struck one of the judges and mailed the order back to the court on December 20, 1995. Trial Rule 76(D) provides that the right to strike must be exercised within fourteen days after the list is submitted to the parties. Based on this requirement, the trial court struck Anthony's striking of one of the judges as tardy, notwithstanding that the list itself was not mailed to Anthony's attorney until after the fourteen days had expired. Anthony filed a T.R. 72(E) motion for relief based on the fact that he could not have possibly complied with the fourteen day requirement since the Clerk failed to transmit the list until after the fourteen days had expired. The trial court denied this motion apparently finding that the 72(E) motion was untimely since it could have been faxed to the court on the day Anthony's counsel received the list of three judges in the mail.[5] Thereafter, the trial

---

4. Apparently not having $7,000 at his disposal, Anthony never availed himself of the option to seek an interlocutory appeal of the trial court's second denial of his motion to change judge.

(*See Trojnar v. Trojnar,* 656 N.E.2d 287 (Ind.Ct. App.1995))

5. This assumes that Anthony's counsel should have been aware that the trial court was going to

court resumed jurisdiction in this cause based on T.R. 79(F)(3), found Anthony in contempt and ordered him incarcerated for sixty days, suspended his driver's license, and ordered him to pay Carole's attorney fees.[6]

Anthony argues that the trial court erred by finding his strike untimely and then compounded this error by denying his T.R. 72(E) motion. I agree with both arguments. First, T.R. 76(D) provides that a party has seven to fourteen days to exercise a strike after *submission* of the list in writing to the parties. Thus, the time an order spends sitting in the Clerk's office is not counted. Placing an order on the Clerk's desk does not constitute submission of it to the parties. I conclude that the trial court erred when it found Anthony's strike untimely since the CCS demonstrates a fourteen day delay from the date the order was issued until the date the Clerk mailed the order and list to Anthony's counsel. The fourteen days contemplated by T.R. 76(D) should begin no earlier than from mailing of the order.

Perhaps the trial court was unaware of this time lag when it initially found Anthony's strike untimely. However, Anthony brought the situation to the court's attention in his 72(E) motion for relief. Trial Rule 72(E) provides for an extension of time, upon showing of good cause, in which to contest a ruling, order or judgment when the CCS demonstrates notice of the ruling, order or judgment was not sent to the moving party. The Clerk is under a duty to send notice of trial court orders to parties. T.R. 72(D); *Marich v. Lake Superior Court*, 273 Ind. 590, 407 N.E.2d 233, 234 (1980). It is an abuse of discretion not to grant relief under T.R. 72(E) where the CCS demonstrates the Clerk failed to send notice. *M & J Services, Inc. v. VMK, Inc.*, 561 N.E.2d 827 (Ind.Ct. App.1990). This holding has been applied to T.R. 76 motions where a party failed to strike because notice of the order was never sent. *Sargent & Lundy v. Vigo Superior Court*, 260 Ind. 472, 296 N.E.2d 785 (1973). The rationale of Trial Rule 72(E) applies. Where the CCS affirmatively demonstrates delay in mailing an order to a party, it is an abuse of discretion to deny that party relief. Thus, the trial court erred by finding Anthony's strike untimely, denying relief under T.R. 72(E) and not granting Anthony's T.R. 76 motion.[7] Accordingly, I conclude that the trial court erred in resuming jurisdiction of this case. The trial court's subsequent rulings are a nullity for want of jurisdiction. *Trojnar, supra*, at 290.

I dissent and would reverse the judgment of the trial court.

charge him with the fourteen day delay when its order was sitting in the Clerk's office.

6. On appeal, the trial court set a bond of $20,000 to stay this order. This court, by its own order, has stayed enforcement of the trial court's order during appeal without the posting of any bond.

7. Without going into detail as to other collateral facts of this case, suffice it to say that if there ever was a fact scenario justifying automatic T.R.76 change of judge motions, this trial court's malevolent disposition toward Anthony Trojnar is it.